FRANCIS BROWN *vs.* HATHAWAY BAKERIES, INC.
MEDDIE W. BROWN *vs.* SAME.

Suffolk.    May 7, 1942. — August 6, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Negligence,* Horse, Use of way, Contributory. *Horse.*

Evidence that the driver of a horse drawing a wagon left it unhitched and unattended on a public way for several minutes, whereupon the horse started to run fast toward a group of children in the street near

by, and that a ten year old boy who was standing on the sidewalk, seeing the horse running toward the children, overtook and attempted to get on the wagon to stop the horse but fell and was run over, warranted a finding of negligence on the part of the driver toward the boy and did not require a ruling that the boy was guilty of contributory negligence.

TWO ACTIONS OF TORT. Writs in the Superior Court dated May 6, 1939.

The actions were tried before *Walsh*, J.

*R. E. McCarthy*, (*R. A. Shea* with him,) for the plaintiffs.

*T. H. Mahony*, (*J. A. Gahan, Jr.*, with him,) for the defendant.

DOLAN, J. These are two actions of tort, the first having been brought to recover compensation for personal injuries alleged to have been sustained by the minor plaintiff, and the second to recover consequential damages. The cases were tried to a jury and at the close of the evidence the judge directed a verdict for the defendant in each case on counts numbered 2, 3 and 4 of the declaration, subject to the plaintiffs' exceptions. The jury returned a verdict in each case for the plaintiff on count 1 of the declaration, alleging negligence on the part of the defendant, and the judge, having reserved leave to enter a verdict for the defendant on that count, did so upon motion of the defendant, subject to the plaintiffs' exceptions.

On October 1, 1938, one Steele, who was employed by the defendant as a retail bakery salesman, was travelling over his route with a horse and wagon owned by the defendant. The horse, called "Ginger," was "a very lively horse." He "had a habit of moving on to the next stop while . . . [Steele] was in a customer's house." The same route was traversed six days in each week. Ginger's conduct was reported by Steele to one Cleary, who was in charge of the defendant's stable, and as a result Steele was "given a weight of about ten or fifteen pounds to hitch to the horse's bit." On the day that the accident occurred Steele, notwithstanding that on more than twenty occasions prior thereto the horse had moved on in his absence, entered a customer's house on the westerly side of Bradley Street,

in Somerville, without hitching the weight to the horse. Before entering he saw several children playing on the sidewalk "near the wagon." When he entered the home of that customer the horse was facing in a southerly direction toward Pearl Street. Leaving that home Steele proceeded directly across the street to the home of another customer, a Mrs. Emerson, which he entered without attaching the weight to the horse. "If Ginger had to wait a while for him to come back Ginger would turn around in the street and stop in front of Emerson's." Steele remained in the Emerson home for "about five or ten minutes." Ginger, following his accustomed habit, "turned around in the street and came to a stop in front of Emerson's facing northerly toward Radcliffe Road." After stopping he "started running . . . started to go fast."

The minor plaintiff (hereinafter referred to as the plaintiff), who was ten years of age, had been standing on the westerly sidewalk of Bradley Street, and saw the horse start to run toward Radcliffe Road. The horse came toward him and passed him and he "went after the horse and wagon; . . . he ran as fast as he could." Before he started to run he saw "kids in the street . . . at the intersection of Radcliffe Road and Bradley Street." They "were half and half in Bradley Street and Radcliffe Road." He overtook the wagon, in which "there was no step just a little platform." He jumped for the platform and one of his feet "got inside of the wagon; . . . he tried to grab something and then fell and . . . the wagon wheel went over his right leg." When Steele came out of the Emerson house he saw that "his wagon was gone . . . [and] he . . . [Steele] started to trot." The horse and wagon were then almost up to Radcliffe Road. He "hollered 'Whoa'" and the horse stopped. The horse had "gathered speed as he went along" and "was running when he was stopped." The plaintiff was then lying in the street "fifteen or twenty feet south and to the rear of the wagon."

The plaintiffs have not argued their exceptions to the action of the judge in allowing the defendant's motion for a directed verdict on counts numbered 2 and 4 of the decla-

ration in each case.  We treat those exceptions as waived.
The sole questions for determination are whether the evi-
dence warranted the jury in finding, as they must have,
that the plaintiff's injury was caused by the negligence of
the defendant, and that the plaintiff was not guilty of con-
tributory negligence.

In *Woodman* v. *Haynes*, 289 Mass. 114, the principles
governing liability for injuries sustained by a person through
the intentional or negligent failure of a person responsible
for the control of a horse to exercise the requisite control,
even where there is no proof that the horse had dangerous
propensities, are set forth with citation of authorities.  It
appears to be settled that liability exists in those circum-
stances.  In the case just referred to it is pointed out, at
page 117, that such cases as *Webber* v. *McDonnell*, 254
Mass. 387, "to the effect that there can be no recovery
without proof of known dangerous propensities, deal with
situations where there is no evidence of negligence or other
fault of the person responsible for control of the horse."
In the instant case it is not necessary to characterize the
habit of the horse involved in moving from one stop to
another as a vicious propensity.  The jury could have found
that he was neither hitched to any post nor otherwise se-
cured; that there was no person upon the seat at the time
of the accident; that there was a negligent failure by Steele
to exercise requisite control over him; and that the horse
and wagon were "left at large in the highway without super-
vision or control." *O'Connor* v. *Hickey*, 260 Mass. 110,
115.  In such circumstances it was held in the case just
cited that a plaintiff was entitled to go to the jury on the
issue of the defendant's negligence.  There is nothing in
*Karp* v. *Whiting Milk Co.* 308 Mass. 60, in conflict with
what we have just said.

The question remains whether it could be ruled on the
evidence that the plaintiff was guilty of contributory
negligence.

The defendant had the burden of proving that the plain-
tiff had been guilty of contributory negligence.  G. L. (Ter.
Ed.) c. 231, § 85.  To establish this the defendant was bound

to show that the plaintiff did not exercise that degree of care that an ordinarily prudent boy of the same age would exercise under similar circumstances. We are of opinion that it could not be ruled properly that the defendant had sustained that burden, and that the question was one for the jury. The jury could have found that the horse was running toward an intersection where children were seen by the plaintiff before and while he was running in an attempt to stop the horse; that he anticipated danger of injury to them; and that, confronted with what could have been found to be an emergency, he acted in an ordinarily prudent manner in the face of those conditions. The jury could find that there was little time for deliberation, since the horse was nearing the intersection, and they could make allowances for the confusion of the moment. It has been held that "The law does not require cowardice or absolute inaction in such a state of things. . . . that the plaintiff should have acted with entire self-possession, or that he should have taken the wisest and most prudent course, with a view to his own self-preservation . . . [and that he] certainly may take some risk upon himself, short of mere rashness and recklessness." *Linnehan* v. *Sampson*, 126 Mass. 506, 511–512. *Barnes* v. *Berkshire Street Railway*, 281 Mass. 47, 50, and cases cited. It was for the jury to say whether in all the circumstances the action of the plaintiff "was so rash and reckless as to preclude a finding that he was in the exercise of due care and was justified" in his course of conduct. *Dixon* v. *New York, New Haven & Hartford Railroad*, 207 Mass. 126, 130. *Burnett* v. *Conner*, 299 Mass. 604, 608.

It follows from what we have said that the action of the judge in entering a verdict on the first count of the declaration in each case, under leave reserved, was erroneous, and that the verdicts returned by the jury on that count must stand.

There was no error in the action of the judge in directing the jury to return a verdict on the third count of the declaration in each case which was based on allegations of wilful, wanton and reckless operation and maintenance of the horse and wagon by the defendant, but which concluded by

joining with those allegations one of negligence on the part of the defendant. The issue of the defendant's negligence was submitted to the jury on the first count.

The plaintiffs' exceptions to the action of the judge in directing a verdict for the defendant in each case on counts numbered 2, 3 and 4 of the declaration are overruled. Their exceptions to his action in entering a verdict in each case for the defendant on count 1 of the declaration are sustained and judgment is to be entered in each case for the plaintiff on the verdict returned by the jury.

*So ordered.*