ALBERT W. BARNES, SR., individually and as administrator, vs. ROBERT GEIGER, JR., & others.[1]

Hampden.  November 12, 1982. — February 28, 1983.

Present: HALE, C.J., CUTTER, & KASS, JJ.

*Negligence*, Emotional distress. *Emotional Distress*, Physical injuries to another. *Actionable Tort.*

Allegations in a complaint concerning a mother who witnessed an accident and, mistakenly believing her son to be the victim, rushed to the scene, suffered severe emotional distress, and died the following day failed to state a claim upon which relief might be granted. [366-369]

CIVIL ACTION commenced in the Superior Court Department on December 14, 1978.

Motions to dismiss were heard by *Cross*, J., and *Smith*, J., and a motion for summary judgment was heard by *Moriarty*, J.

*Louis Kerlinsky* for the plaintiff.
*Edward J. McDonough* for The Early Pioneer, Inc.
*John J. McCarthy* for Robert Geiger, Jr.

KASS, J.  On the basis of the facts recited in the following paragraph, Albert W. Barnes, Sr., as administrator of the estate of Frances M. Barnes and as her husband, brought an action to recover damages for the death and conscious suffering of Mrs. Barnes, for loss of consortium, and for consequential damages.

From, or near, her home Mrs. Barnes saw a car strike a pedestrian and toss him sixty feet in the air.  The point of impact was near an area where Mrs. Barnes's thirteen-year

---

[1] Hilltop Grocery, Inc., The Early Pioneer, Inc., Town of Southwick, the chairman of the county commissioners of Hampden, and the school committee of Southwick.

old son and ten-year old daughter had gone ice skating. Convinced that the accident victim was her son, Mrs. Barnes ran to the scene of the accident, according to the complaint "to rescue the injured." She was mistaken. The stricken party, who died of his injuries, was not her child but an unrelated fifteen year old boy named Michael Le-Febvre. The next day Mrs. Barnes died of a cerebral vascular hemorrhage, triggered, the complaint alleges, by elevation of her blood pressure "caused by witnessing and going to the scene of the accident." Robert Geiger, Jr., the primary defendant, was the driver of the car which hit Le-Febvre.

Geiger successfully moved for summary judgment (Mass. R.Civ.P. 56, 365 Mass. 824 [1974]) on the basis of undisputed facts stitched together from the complaint, representations of counsel in open court, and statements of facts in briefs filed by the parties in the trial court.[2] Judgment entered accordingly. We have the benefit of a thoughtful and well documented memorandum and order by the motion judge, which considers the two issues in the case: (1) May a person who mistakenly believes that the victim of an accident is her child recover damages for physical injury induced by mental distress suffered because of what the person saw of the accident? (2) May she recover on the theory that she foreseeably came to the rescue of someone whom the defendant had placed in peril by his negligence? We are of opinion that the answer to both questions is "No" and affirm the judgments.

1. *Physical injury based on mental distress.* The starting point is *Dziokonski* v. *Babineau*, 375 Mass. 555 (1978), in which the court abandoned the rule that recovery for negligently inflicted injury resulting from mental distress was

---

[2] These unsworn assertions of fact would not have supported a motion for summary judgment, *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553-554 (1976), had not the parties agreed to present the case in that form. As to the defendants other than Geiger, the complaint was dismissed for failing to state a claim for which relief could be granted. Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974).

available only if the emotional trauma was coupled with a physical impact. *Spade* v. *Lynn & Boston R.R.*, 168 Mass. 285, 290 (1897). In *Dziokonski* an action lay against the driver of a car which struck a child[3] upon allegations that the child's mother suffered emotional shock and consequent death when she went to the scene of the accident and saw her daughter lying injured on the ground. *Dziokonski* v. *Babineau*, 375 Mass. at 557 and 568. Presence in the zone of danger or, indeed, immediate presence at the scene of the accident is not essential to the cause of action. If the emotional trauma to immediate family occurs at the hospital, but hard on the heels of the accident, the injury to the third parties has been held to be equally foreseeable. *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 517-518 (1980).

In the instant case the plaintiff seeks to extend *Dziokonski* another step by making tortfeasors liable to an unrelated person who mistakenly apprehends that her child has been hurt. Although what is reasonably foreseeable depends in fair measure on the range of vision of particular judges,[4] foreseeability has been a significant tool of analysis in the law of torts since *Palsgraf* v. *Long Island R.R.*, 248 N.Y. 339, 341-343 (1928). See generally Restatement (Second) of Torts § 435 (1964); Prosser, Torts 254-270 (4th ed. 1971);

---

[3] The owner of a school bus from which the child had alighted and the driver of that bus were also defendants in *Dziokonski*.

[4] Prosser makes some scholarly sport of this proposition by collecting (Prosser, Torts 269-270 [4th ed. 1971]) extremes of what courts have found reasonably foreseeable and unforeseeable. For example, the court in *Sinram* v. *Pennsylvania R.R.*, 61 F.2d 767, 771 (2d Cir. 1932), thought that the owner of a tug which negligently collided with a barge need not have considered the possibility that she would have been loaded without inspection and sink because of the damage done. A Texas court found reasonably foreseeable the following events: a mudhole is negligently left by a railroad company in a crossing; a car gets stuck; the plaintiff comes to help tow the mired car out; he has a wooden leg; just as the car brought in to pull the first one out begins to move, the plaintiff gets his wooden leg stuck in the mud; a coil in the tow rope lassos the plaintiff's good leg and mangles it so badly the leg has to be amputated. *Hines* v. *Morrow*, 236 S.W. 183, 183-184 (Tex. Civ. App. 1922).

2 Harper & James, Torts § 18.2 (1956). Foreseeability was at the core of the reasoning in *Dziokonski*: it was determined to be "reasonably foreseeable that, if one negligently operates a motor vehicle so as to injure a person, there will be one or more persons sufficiently attached emotionally to the injured person that he or they will be affected." *Dziokonski, supra* at 567. Other jurisdictions and commentators have made similar observations about an injured child and nearby parent-witnesses. *Dillon* v. *Legg,* 68 Cal. 2d 728, 741 (1968). *D'Ambra* v. *United States,* 114 R.I. 643, 662 (1975) (Kelleher, J., concurring). 2 Harper & James, Torts § 18.4, at 1039 (1956). Prosser, Torts 334 (4th ed. 1971).

Five years before *Dillon* v. *Legg, supra,* cast off the old impact rule in California, the Supreme Court of that State, in *Amaya* v. *Home Ice, Fuel & Supply Co.,* 59 Cal. 2d 295 (1963), made a stand for orthodoxy in the course of which it foretold the sort of question brought to the front in the case at bar. "But what," the court hypothesized, "if the plaintiff was honestly mistaken in believing the third person to be in danger or to be seriously injured?" *Id.* at 312.

Whether the mistake be as to the identity of the victim, as here, or the gravity of the injury, the anxiety, perforce, is transitory, and "a fleeting instance of fear or excitement," as the court observed in *Dziokonski,* at 566, does not present a set of circumstances against which a tortfeasor can fairly be asked to defend. Daily life is too full of momentary perturbation. Injury to a child and the protracted anguish placed upon the witnessing parent is, on the scale of human experience, tangible and predictable. Distress based on mistake as to the circumstances is ephemeral and will vary with the disposition of a person to imagine that the worst has happened. We are unwilling to expand the circle of liability drawn in *Dziokonski* to such an additional dimension, because to do so expands unreasonably the class of persons to whom a tortfeasor may be liable.

Expressing the issue in terms of foreseeability, we are of opinion that psychic trauma and resulting physical injury to

a person who mistakenly believes a close family member to be the victim of an observed accident is beyond the reasonably foreseeable. Arriving at that conclusion is in fair measure a pragmatic judgment rather than a systematic application of a general principle. See *Payton* v. *Abbot Labs*, 386 Mass. 540, 555-556 (1982); Prosser, Palsgraf Revisited, 52 Mich.L.Rev. 1, 24-28 (1953). As did the court in *Hunsley* v. *Giard*, 87 Wash. 2d 424, 435 (1976), "we are balancing the interest of an injured party to compensation against the view that a negligent act should have some end to its legal consequences."[5]

2. *The rescue theory.* In abbreviated — and somewhat elementary form, the rescue doctrine may be characterized as follows: negligence which creates peril invites rescue and, should the rescuer be hurt in the process, the tortfeasor will be held liable not only to the primary victim, but to the rescuer as well. See Tiley, The Rescue Principle, 30 Mod. L. Rev. 25 (1967); Prosser, Torts § 43, at 258-259 (4th ed. 1971); Restatement (Second) of Torts § 445 comment d. It was elegantly articulated by Chief Judge Cardozo in *Wagner* v. *International Ry.*, 232 N.Y. 176, 180 (1921): "The

---

[5] Courts have had to engage in similar exercises in deciding what, in a particular case, is a sufficiently close relationship to constitute a link in the negligence — accident — psychic trauma — recovery chain. In addition to some of the parent-child cases already noted, the husband-wife relationship, predictably, has been sufficient. *Grimsby* v. *Samson*, 85 Wash. 2d 52, 60 (1975). A sibling relationship supported liability in *Landreth* v. *Reed*, 570 S.W.2d 486, 490 (Tex. Civ. App. 1978). Less obvious, although not remarkable in context, was that a stepgrandmother was closely related enough. *Leong* v. *Takasaki*, 55 Hawaii 398, 410-411 (1974). The child-dog relationship made the grade in *Campbell* v. *Animal Quarantine Station*, 63 Hawaii 557 (1981) (dog died of heat prostration), but a woman housemate who alleged she was the de facto spouse of the male accident victim did not in *Drew* v. *Drake*, 110 Cal. App. 3d 555, 557-558 (1980). Dissenting in the latter case, Justice Poche was moved to write: "Giving full credit to the rarified air at the appellate level the conclusion reached here today is nevertheless astonishing: my majority colleagues have determined the incidence of cohabitation without benefit of clergy in contemporary California society to be so rare that it can be characterized as 'unexpected and remote.'" *Id.* at 559. See generally Annot., 94 A.L.R.3d 486 (1979).

cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and the probable. The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to his rescuer."

Case law applying the rescue principle in Massachusetts is sparse. Two cases upon which the plaintiff relies, *Barnes* v. *Berkshire St. Ry.*, 281 Mass. 47, 49-50 (1932), and *Burnett* v. *Conner*, 299 Mass. 604, 607-608 (1938), hold no more than that rescuers are not, as matter of law, culpable of contributory negligence because they place themselves in a position of danger.[6] See to similar effect *Brown* v. *Hathaway Bakeries, Inc.*, 312 Mass. 110, 113-114 (1942). Although each of these decisions uses the rescue doctrine to neutralize the defense of contributory negligence, the principle appears not to be limited to that context. An earlier case, *Dixon* v. *New York, N.H., & H. R.R.*, 207 Mass. 126, 131 (1910), cited with approval in the later cases, applied the rescue doctrine more broadly, remarking that the defendant's negligence towards a teamster, Coombs, who had entered its freight yard, directly induced the plaintiff's attempt to rescue Coombs and caused the plaintiff's injury. Cf. *Edgarton* v. *H.P. Welch Co.*, 321 Mass. 603, 614 (1947), in which the rescue principle was recognized, although not applied on the facts. Cf. also *D'Angeli's Case*, 369 Mass. 812, 816-817 (1976), applying the doctrine in the context of a worker's compensation case. Examples of application of the rescue doctrine in other jurisdictions abound, e.g.: *Scott* v. *Texaco, Inc.*, 239 Cal. App. 2d 431, 434-436 (1966); *Solgaard* v. *Guy F. Atkinson Co.*, 6 Cal. 3d 361, 368-370 (1971); *Henneman* v. *McCalla*, 260 Iowa 60, 72-73 (1967); *Lynch* v. *Fisher*, 34 So.2d 513, 517 (La. App. 1947); *Colon* v. *Margolis*, 17 N.Y.2d 798, 798-799 (1966); *Williams*

---

[6] In *Burnett,* the rescuer was trying to stop the defendant's rolling and unmanned car and was killed. The plaintiff in *Barnes* was attempting to push a stalled car off trolley tracks when he was hurt.

v. *Morristown*, 32 Tenn. App. 274, 292 (1949). See also the additional cases collected in 5A Frumer et al., Personal Injury "Rescuers" §§ 1.01, 1.02(1) (9), 1.03 (1980).

A common thread runs through the cases which recognize the rescue doctrine, and that is some act of intervention, e.g., moving a vehicle, searching for a missing person, attempting to restrain a horse, running into a burning building, flagging down traffic, administering first aid, moving a burning barrel, or jumping into a swimming pool. In the case at bar there is no suggestion that Mrs. Barnes intervened in any fashion, attempted to do so, or that there would have been any purpose in her doing so. Danger invites rescue; accidents invite onlookers. It is not reasonable that the rescue doctrine be extended to all who run to the scene of a calamity to see what happened and on the chance that they might be able to do some good. To achieve the status of a rescuer, a claimant's purpose must be more than investigatory. There must be asserted some specific mission of assistance by which the plight of the imperilled could reasonably be thought to be ameliorated. Cf. *Hughes* v. *Polk*, 40 Mich. App. 634, 637 (1972), in which a mother was knocked to the ground while running to the site of an accident which had befallen her daughter, but with the specific purpose of extricating her daughter from the car she was driving and which had been in a collision which the mother witnessed.

To the degree that *Dziokonski* v. *Babineau*, 375 Mass. at 567, established a limitation of close familial relationship to set in motion the psychic trauma-physical damage sequence, that limitation would effectively be undone by acknowledging as actionable allegations of an undefined intent to rescue.

Resolution of the case on the grounds stated disposes as well of the claims against the other defendants. Their asserted negligence bears on the circumstances of the accident which befell the unrelated victim, LeFebvre. Their alleged

duty and liability to Mrs. Barnes is entirely vicarious, i.e., based on the harm to her from witnessing the accident or the strain incident to running toward the scene.

*Judgments affirmed.*