Michael MIGLIORI, Plaintiff,

v.

AIRBORNE FREIGHT CORP., Louis A. Giangregorio, Defendants.

Civil Action No. 96–11483–WGY.

United States District Court, D. Massachusetts.

Jan. 8, 1997.

Mark J. McNally, North Andover, MA, for Michael Migliori.

Roland Segalini, Jr., Segalini & Neville, Waltham, MA, for Airborne Freight Corporation, Louis A. Giangregorio.

### MEMORANDUM AND ORDER FOR CERTIFICATION

YOUNG, District Judge.

This case presents a classic question of the evolution of the common law, a matter of first impression within this District and Commonwealth. Does a person who comes upon the scene of an accident and voluntarily administers CPR to a profusely bleeding victim, to whom he or she has no familial or other pre-existing relationship, have a viable claim for negligent infliction of emotional distress against the tortfeasor under Massachusetts law if the rescue attempt is unsuccessful and, as a result, the rescuer suffers severe emo-

tional distress that further leads to physical problems?

## I. BACKGROUND

Michael Migliori ("Migliori") filed this diversity action pursuant to 28 U.S.C. § 1331 asserting a claim for negligent infliction of emotional distress. The defendants come before this Court with a motion for pre-discovery summary judgment that is, in substance, a motion to dismiss for failure to state a claim. Accordingly, for purposes of this motion, the Court accepts as true all the factual allegations set forth in Migliori's complaint and draws all reasonable inferences in favor of Migliori. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989).

From Migliori's Complaint, Migliori's affidavit, and the medical records disclosed by Migliori pursuant to the automatic disclosure requirements of Fed.R.Civ.P. 26 and Local Rule 26.1, the Court gleans the following facts:

Migliori is a Petty Officer First Class in the United States Navy, trained in cardiopulmonary resuscitation ("CPR"). In August, 1990, Migliori was stationed at the Navy/Marine Corps Reserve Center in Lawrence, Massachusetts. As part of his duties at that time, Migliori gave instruction in CPR to other military personnel and Lawrence area high school students who were planning military careers.

On August 27, 1990, Migliori, on leave and dressed in civilian clothes, was walking down Congress Street in Boston, Massachusetts, at approximately twelve noon and saw that another pedestrian, Joanne Perkins ("Perkins"), had been negligently struck by a van operated by Louis A. Giangregorio and owned by Airborne Freight Corp. (collectively "the Defendants").[1] Migliori immediately went to Perkins' aid and discovered that she had no pulse. He then began to administer CPR, despite the fact that Perkins was bleeding from her eyes, ears, nose, mouth, and numerous other injuries. Migliori managed to restore Perkins' heartbeat on two brief occasions, but ultimately could not revive her. Public safety personnel responded to the scene of the accident, and Migliori, now drenched in blood, watched as they placed Perkins in an ambulance. She was taken to Massachusetts General Hospital and pronounced dead at 12:30 p.m.

As a result of this failed rescue attempt, Migliori has developed post-traumatic stress disorder along with other symptoms of emotional distress that have further led to physical problems. Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Pre–Discovery Motion for Summary Judgment ("Plaintiff's Mem.") at 4. Migliori told psychologists that he blamed himself for Perkins' death and that he felt as if he had failed at the most important thing in his life. Exhibit C, Memorandum of Law in Support of Defendants' Pre–Discovery Motion for Summary Judgment ("Defendant's Mem.").

The Defendants filed this motion for pre-discovery summary judgment and contend that, under Massachusetts law, Migliori cannot assert a claim for negligent infliction of emotional distress stemming from Perkins' death because he did not have a pre-existing familial or other close relationship with Perkins.[2] Migliori responds that Massachusetts law does recognize a cause of action for emotional harm in these circumstances pursuant to the "rescue doctrine."

## II. DISCUSSION

■ Under Massachusetts law, a plaintiff seeking to recover for negligent infliction of emotional distress must prove: 1) negligence; 2) emotional distress; 3) causation; 4) physical harm manifested by objective symptomatology; and 5) that a reasonable person would have suffered emotional distress under the circumstances of the case. *Payton v. Abbott Labs*, 386 Mass. 540, 557, 437 N.E.2d 171 (1982). *See generally* Hon. Steven R. Plotkin, The Evolution of Tort Liability for Psychic Injuries: A Proposal to Protect Relational Interests (1986) (unpublished Ll.M.

---

1. Migliori stated in his affidavit that, to the best of his recollection, he was closer than fifty feet to Perkins at the time she was struck by the van.

2. Migliori acknowledges that there "is no known familial relationship by blood or marriage between Migliori and Perkins." Plaintiff's Mem. at 4.

thesis, University of Virginia) (on file in these chambers) (discussing *Payton* extensively). Central to this last requirement is the concept of reasonable foreseeability. *Id.* at 556–57, 437 N.E.2d 171. "[R]easonable foreseeability is a proper starting point in determining whether an actor is to be liable for the consequences of his negligence." *Dziokonski v. Babineau*, 375 Mass. 555, 567, 380 N.E.2d 1295 (1978).[3]

## A. Bystander Recovery for Negligent Infliction of Emotional Distress

█ In *Dziokonski*, the Supreme Judicial Court established the standard for bystander recovery for negligent infliction of emotional distress. Specifically, the court held that a parent who suffers physical harm as a result of severe mental distress over peril to her child caused by the defendant's negligence has a viable claim for negligent infliction of emotional distress, provided that she witnessed the accident or came upon the scene while the child was still there. *Id.* at 568, 380 N.E.2d 1295. In reaching this conclusion, the court abandoned the long-standing "impact" test and declined to impose a "zone of danger" requirement. *Id.* at 567–68, 380 N.E.2d 1295. When a person commits an act of negligence that injures another, the court explained, it is reasonably foreseeable that "there will be one or more persons sufficiently attached emotionally to the injured person that he or they will be affected." *See id.* at 567, 380 N.E.2d 1295. The court also held, however, that since the "class of persons vicariously affected by the tortfeasor's conduct may be large," *id.* at 567, 380 N.E.2d 1295, a court must consider a variety of factors before permitting a claim to go forward, "such as where, when, and how the injury to the third person entered into the consciousness of the claimant, and what degree there was of familial or other relationship between the claimant and the third person," *id.* at 568, 380 N.E.2d 1295.

Several post-*Dziokonski* cases have addressed the requirements of physical and temporal proximity,[4] but only one has dealt with the question of how broadly the term "familial or other relationship" is to be construed. In *Barnes v. Geiger*, 15 Mass.App. Ct. 365, 446 N.E.2d 78, *rev. denied*, 389 Mass. 1101, 448 N.E.2d 767 (1983), the Massachusetts Appeals Court affirmed summary judgment for the defendants and held that a mother did not have a triable claim for the psychic trauma that she endured when she witnessed a car accident that she mistakenly believed involved her own son. *Id.*, 15 Mass. App.Ct. at 368–69, 446 N.E.2d 78. After stating that allowing recovery would unreasonably expand the scope of liability established in *Dziokonski*, the court ruled that emotional distress in these circumstances was "beyond the reasonably foreseeable." *Id.* at 369, 446 N.E.2d 78. The *Barnes* court noted that such a "conclusion is in fair mea-

3. Drawing all reasonable inferences in favor of Migliori, the Court holds that Migliori's Complaint meets the first four requirements for a cause of action for negligent infliction of emotional distress. In particular, the Court notes that Migliori does allege that his emotional distress has resulted in objective manifestations of physical harm. Therefore, throughout this opinion, whenever this Court refers to emotional distress or emotional harm, it is actually referring to emotional distress that has further led to physical problems.

4. The Supreme Judicial Court relaxed the proximity requirement somewhat in *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 413 N.E.2d 690 (1980), and permitted the wife and child of an accident victim to maintain a cause of action for negligent infliction of emotional distress even though the plaintiffs were not at the scene of the accident and first observed the victim in a hospital immediately afterwards. *Id.* at 518, 413 N.E.2d 690. "So long as the shock follows closely on the heels of the accident," the court explained, this type of injury is reasonably foreseeable. *Id.*

In cases since *Ferriter*, however, the Supreme Judicial Court has declined to loosen further the proximity requirement. *See Stockdale v. Bird & Son, Inc.*, 399 Mass. 249, 252, 503 N.E.2d 951 (1987) (holding that mother who did not see the injuries to her son's body until twenty-four hours after the accident occurred did not state a claim for negligent infliction of emotional distress); *Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 341–43, 450 N.E.2d 581 (1983) (denying recovery when mother did not learn of son's death in a plane crash until seven hours after the accident); *Miles v. Edward O'Tabor, M.D., Inc.*, 387 Mass. 783, 788–89, 443 N.E.2d 1302 (1982) (refusing to permit mother to recover for negligent infliction of emotional distress by a doctor whose negligence at her son's birth resulted in son's death two months later).

sure a pragmatic judgment rather than a systematic application of a general principle." *Id.* at 369, 446 N.E.2d 78.

## B. The Rescuer Doctrine

Although the *Barnes* court held that a bystander with no familial or other pre-existing relationship to the victim may not state a claim for negligent infliction of emotional distress, it left open the question of whether a plaintiff's status as a rescuer might provide an independent basis for recovery. *See id.* at 370–71, 446 N.E.2d 78. The plaintiff in *Barnes* based her claim on two grounds: first, that she mistakenly believed the victim was her son, and second, that she had foreseeably come to the rescue of a person whom the defendant had negligently placed in peril. In addressing the second component of the plaintiff's claim, the court acknowledged the long-standing doctrine that "negligence which creates peril invites rescue, and should the rescuer be hurt in the process, the rescuer will be liable not only to the primary victim, but to the rescuer as well." *Id.* at 369, 446 N.E.2d 78 (citing Tiley, *The Rescue Principle*, 30 Mod.L.Rev. 25 [1967] ). The court then held the rescue doctrine inapplicable because, in that case, the plaintiff did not actually intervene and render aid to the stricken child.

> A common thread runs through the cases which recognize the rescue doctrine, and that is some act of intervention, e.g., ... administering first aid, .... [T]here is no suggestion that Mrs. Barnes intervened in any fashion.... Danger invites rescue; accidents invite onlookers. It is not reasonable that the rescue doctrine be extended to all who run to the scene of a calamity to see what happened on the chance that they might be able to do some good.

*Id.* at 371, 446 N.E.2d 78.

■ Since Migliori did affirmatively render aid to Perkins, the case at bar requires

this Court to consider the question that the *Barnes* court raised without needing to address: Is it reasonably foreseeable that a rescuer would suffer this type of emotional distress after an unsuccessful rescue attempt? Unfortunately, Massachusetts law provides this Court with little specific guidance. Although Massachusetts courts have recognized the existence of the rescue doctrine since the beginning of the twentieth century, *see id.* at 369–70, 446 N.E.2d 78 (citing *Dixon v. New York, New Haven & H.R.R.*, 207 Mass. 126, 131, 92 N.E. 1030 [1910]; *Barnes v. Berkshire St. Ry.*, 281 Mass. 47, 49–50, 183 N.E. 416 [1932]; *Burnett v. Conner*, 299 Mass. 604, 607–608, 13 N.E.2d 417 [1938] ), Massachusetts case law applying the doctrine is "sparse," and its scope remains undefined. *See Barnes*, 15 Mass.App.Ct. at 370, 446 N.E.2d 78.

In *Lafferty v. Manhasset Med. Ctr. Hosp.*, 54 N.Y.2d 277, 445 N.Y.S.2d 111, 429 N.E.2d 789 (1981), however, the New York Court of Appeals addressed this issue in similar circumstances and held that a rescuer does not have a cause of action for negligent infliction of emotional distress under the law of New York. There the plaintiff had invoked the rescue doctrine in seeking to recover for the emotional trauma that she suffered after unsuccessfully attempting to save her mother-in-law from a negligent blood transfusion. *Id.*, 445 N.Y.S.2d at 112, 429 N.E.2d at 790. The Court of Appeals concluded that, although the complaint related an "unfortunate" incident, it did "[not] fit within the recognized limits of the rescuer doctrine. We have never held that a rescuer can recover for psychic injury sustained only as a result of observing the person he or she intended to rescue suffer from the defendant's negligence." *Id.*, 445 N.Y.S.2d at 112, 429 N.E.2d at 790 (internal citations omitted).[5]

---

5. More recently, in *Hassanein v. Avianca Airlines*, 872 F.Supp. 1183 (E.D.N.Y.1995), a homeowner invoked the "danger invites rescue" doctrine in seeking to recover for the emotional trauma that she suffered when an airplane crashed near her home. The district court held that the plaintiff had failed to state a claim for negligent infliction of emotional distress under New York law. First, the court noted that al-

though the plaintiff was generally helpful at the crash site—directing emergency vehicles and allowing her home to become an emergency command post—she did not directly administer aid to any of the victims, and thus was more of a bystander than a rescuer. *Id.* at 1187–88. Second, the court cited *Lafferty* and stated that New York courts have never permitted a rescuer to recover for purely emotional injuries sustained

■ The persuasiveness of *Lafferty* is diminished somewhat by the fact that New York, unlike Massachusetts, does not permit recovery for negligent infliction of emotional distress unless the plaintiff was in the "zone of danger." *See Bovsun v. Sanperi*, 61 N.Y.2d 219, 473 N.Y.S.2d 357, 361–64, 461 N.E.2d 843, 847–49 (1984). Indeed, the *Lafferty* court stated that it would be inequitable to allow a rescuer to assert a claim in these circumstances while denying recovery to those who are most closely related to the injured party but who were so immobilized by shock that they lacked the presence of mind to render assistance. *Lafferty*, 445 N.Y.S.2d at 112, 429 N.E.2d at 791. In contrast, in Massachusetts the risk of such injustice would be less pronounced because close relatives who witnessed the accident but were outside the zone of danger would still be entitled to recover under *Dziokonski*. *See Dziokonski*, 375 Mass. at 568, 380 N.E.2d 1295.

### C. Reasonable Foreseeability

Given the lack of any direct guidance in Massachusetts or elsewhere, this Court must look to more general principles of Massachusetts tort law. In *Dziokonski*, the Supreme Judicial Court held that when measuring reasonable foreseeability, courts must make "[e]very effort ... to avoid arbitrary lines which unnecessarily produce incongruous and indefensible results." *Id.* (internal citations omitted). At the same time, however, the *Dziokonski* court cautioned that certain pragmatic considerations must enter into the analysis in order to impose reasonable limits on the scope of a defendant's liability. *Id.* "It does not matter in practice whether these factors are regarded as policy considerations imposing limitations on the scope of reasonable foreseeability, or as factors bearing on

the determination of reasonable foreseeability itself." *Id.* (internal citations omitted).[6]

Against this backdrop, this Court holds that, as matter of Massachusetts law, generalized claims of emotional harm by a rescuer, resulting from an unsuccessful rescue attempt, go beyond the reasonably foreseeable. This Court salutes Migliori for his heroic efforts to save Ms. Perkins. This Court further recognizes that a rescuer who steps forward with a desperate, hands-on effort to help a dying victim has a far more compelling claim for emotional distress than a detached onlooker who merely happens to witness a traumatic accident. This Court concludes, however, that allowing such a claim as this to proceed would unreasonably extend the boundaries of liability for negligent conduct. The bond between rescuer and victim, although significant, does not rise to the level of those between close family members.

Recognizing the need to avoid drawing arbitrary lines, however, *see Dziokonski*, 375 Mass. at 568, 380 N.E.2d 1295, this Court does not hold that there are no circumstances in which a rescuer with no pre-existing relationship to the victim might state a viable claim for negligent infliction of emotional distress. "As a matter of public policy, the rescue doctrine supports the heroic acts of individuals who rush into danger to rescue others from imminent peril." *Snellenberger v. Rodriguez*, 760 S.W.2d 237, 238 (Tex.1988). Had Migliori alleged emotional distress stemming directly from the peril that he faced during the rescue attempt, his claim might survive summary judgment. If, for example, a rescuer rushes into a burning building to save a fire victim and subsequently suffers emotional distress relating to the fear of himself dying in the fire, it would not seem unduly to extend the boundaries of Massachusetts liability for negligent conduct to

from observing the person she attempted to rescue. *Id.* at 1188.

**6.** The defendants argue that this Court should limit its analysis to the specific factors mentioned by the *Dziokonski* court, particularly to "what degree there was of familial or other relationship" between the claimant and the victim. *Dziokonski*, 375 Mass. at 568, 380 N.E.2d 1295. Under this approach, the crucial question before this Court would be whether the relationship

between rescuer and victim qualifies as a "familial or other relationship."

The Court refuses to adopt such a narrow reading of *Dziokonski*. The *Dziokonski* court listed those factors only as examples of what a court should consider in "cases of [that] character." *Id.* Since Migliori seeks to recover as a rescuer, rather than a bystander, the case at bar is of a profoundly different character.

hold the tortfeasor who caused the fire accountable. So it is here. By administering CPR to a profusely bleeding stranger, and in the process bloodying his own hands and mouth, Migliori selflessly exposed himself to unknown hazards. *See AIDS and Patient Management: Legal, Ethical and Social Issues* (Michael D. Witt ed., National Health Pub.1986) 7–8 (citing D.D. Ho, R.T. Schooley, T.A. Rota et al., *HTLV–III in the Semen and Blood of a Healthy Homosexual Man,* 226 Science 451–53 [1984]).

As framed, however, Migliori's claim requires this Court to go further and hold a tortfeasor responsible for various types of emotional distress stemming from a rescue attempt—for example, trauma from observing the victim's suffering, or even the rescuer's own sense of failure. While Migliori acted in the proudest lifesaving tradition of the United States Navy and may deservedly be recognized for his efforts, *see* Lt. David L. Tiley, *Uncommon Valor ... Decorations, Badges and Service Medals of the U.S. Navy and Marine Corps* (Walsworth Pub. Co. 1980) 29 (describing the requirements for the award of the Meritorious Service Medal), this Court rules that the various forms of emotional harm he alleges have befallen him do not fall within the range of the "natural and the probable consequences" of the defendants' negligent conduct. *See Dziokonski,* 375 Mass. at 567, 380 N.E.2d 1295 ("defen-dant is liable for the natural and probable consequences of his conduct"); *Daigle v. Phillips Petroleum Co.,* 893 S.W.2d 121, 122 (Tex.Ct.App.1995) ("The rescue doctrine applies when a defendant negligently creates a situation that necessitates a rescue effort, and the rescuer's subsequent injuries are reasonably foreseeable as a natural and probable result of such negligence.").

■ Nevertheless, the Court also recognizes that "the issue of foreseeability is largely a policy decision, rather than a question to which objective legal principles can cleanly be applied." *Jorgensen v. Massachusetts Port Auth.,* 905 F.2d 515, 523 (1st Cir.1990). As a result, it is an "issue better left to a state's own courts to resolve." *Id.* "While it is within the power of the Court to address matters of state law, such an interpretation is best made by the judicial authority vested constitutionally with supreme authority to interpret the laws of Massachusetts." *Williams v. Hanover Hous.Auth.,* 871 F.Supp. 527, 534 (D.Mass.1994).[7] Therefore, pursuant to Supreme Judicial Court Rule 1:03, this Court certifies to the Supreme Judicial Court the question of whether, under Massachusetts law, a rescuer, with no pre-existing familial or other relationship to the victim, may state a claim for negligent infliction of emotional distress stemming from an unsuccessful rescue attempt.[8] The

---

7. As an Associate Justice of the Massachusetts Superior Court, which court is thought by many to be the greatest common law court in America today, I did not hesitate to participate in the evolution of Massachusetts common law. *See Prince-Jackson v. Children's Hosp. Med. Center,* Suffolk Superior Ct. 1985 (a case of first impression, holding that a parent has a claim for loss of consortium upon the wrongful death of a child, a position later enacted into law, Mass.Gen.L. ch. 231, § 85X) *(cited in* 2 ATLA L.Rep. 202 [1985]); (I *Juries, Judges and Judging* 121 [MCLE, 1996]). A federal district judge, however, has no power to declare the common law of a state. *See Tri–Continental Leasing Corp. v. Cicerchia,* 664 F.Supp. 635, 638 n. 3 (D.Mass.1987).

8. This Court has reflected carefully upon the admonition of the Massachusetts Supreme Judicial Court that questions ought not be certified to it unless they are truly dispositive of the case. *See Canal Elec. Co. v. Westinghouse Elec. Corp.,* 406 Mass. 369, 372, 548 N.E.2d 182 (1990). It seems to this Court that the requisite standard is met in this case. After all, as framed by Migliori's Complaint, this Court has granted the Defendants' motion for summary judgment and, unless the certified question is answered in some affirmative form, it will enter judgment for the Defendants.

It is true, of course, that Migliori, consistent with Fed.R.Civ.P. 11, might seek to amend his Complaint to allege the harm this Court has indicated might survive summary judgment. In that instance, this case might proceed through settlement or trial. The former eventuality would obviate the need for a resolution of the question posed. The latter will not, whatever the jury verdict. Migliori can be expected to appeal either a Defendants' verdict (saying this Court set the bar to recovery too high) or one in his favor (saying the range of harms recoverable is too narrow). Certification at the present stage of this litigation thus serves the goals of the Supreme Judicial Court rule by bringing this litigation to an end or setting it upon the proper course. *But see, Canal Elec. Co. v. Westinghouse Elec. Corp.,* 973 F.2d 988, 996–97 (1st Cir.1992). Naturally, should the Supreme Judicial Court

**44**

record accompanying this certification shall consist of the pleadings, the memoranda, affidavits, and other exhibits submitted by the parties regarding this motion, and this opinion.

### III. CONCLUSION

This Court holds that to allow a rescuer such as Migliori, with no preexisting familial or other relationship to the victim, to recover for negligent infliction of emotional distress stemming from a failed rescue attempt, would unduly expand the scope of liability for negligent conduct set forth by the Supreme Judicial Court in *Dziokonski*. In light both of the scarcity of Massachusetts case law applying the rescue doctrine and the extent to which foreseeability analysis depends upon policy considerations, however, this matter is *CERTIFIED* to the Supreme Judicial Court of Massachusetts for its authoritative opinion. The defendants' motion for summary judgment is *GRANTED* subject to the receipt of the decision of the Supreme Judicial Court. This case shall be administratively closed pending the receipt of such opinion.

### CERTIFICATION

For the reasons discussed, a question of Massachusetts law on which this Court is unable to find clear, controlling precedent in the decisions of the Supreme Judicial Court is determinative as to whether Migliori may proceed with his claim.

Accordingly, this Court certifies the following question to the Supreme Judicial Court of Massachusetts pursuant to its Rule 1:03:

> Does a person who witnesses or comes upon the scene of an accident and voluntarily renders aid to a victim to whom he or she has no familial or other pre-existing relationship, have a cognizable claim for negligent infliction of emotional distress under Massachusetts law if 1) the rescue attempt fails, and as a result, 2) the rescuer suffers severe emotional distress which 3) further leads to physical problems?

The Clerk will transmit this question and the opinion in this case, along with the pleadings

and the memoranda, affidavits, and other exhibits submitted by the parties regarding this summary judgment motion, to the Supreme Judicial Court of Massachusetts.

desire a more developed factual record, it can so indicate in its response.