Agnes, A.J.
The plaintiff, Debra M. Bertocci (hereinafter “Plaintiff’), brought suit against Indoor Sports Management, Inc. as General Partner of Acton Indoor Sports Limited Partnership, Acton Indoor Sports Limited Partnership and Kevin Hull (hereinafter “Defendants”) alleging that their negligent operation of a batting cage facility resulted in serious injury to the Plaintiff. Specifically, the Plaintiff alleges that the Defendants failed to provide safety equipment and instructions or warn the Plaintiff of the dangers associated with the activities on the premises. The Plaintiff alleges that this failure to provide safety equipment and warn the Plaintiff of hazards on the premises caused her to enter the batting cage where her son was practicing baseball where she was struck in the face by his bat. For the reasons set forth herein, the Defendants’ motion for summary judgment is ALLOWED in part and DENIED in part.
BACKGROUND
The materials submitted on the motion for summary judgment are as follows.[3] The Plaintiff is the mother of Adam Piantedosi who, at the time of the Plaintiffs injury on May 23, 1997, was ten years old. Adam played Little League baseball on a Triple A team during the Spring of 1997. This was the first season Adam participated in organized baseball. To the best of her knowledge, the Plaintiff attended all of Adam’s Little League baseball games during the Spring of 1997 prior to her injury.
On May 23, 1997, the Plaintiff and Adam arranged to meet Adam’s teammate, Brett Carpenter, and Brett's mother Jan Carpenter, at the Acton Indoor Sports facility in Acton, Massachusetts in order for the boys to participate in batting practice. Brett and Jan arrived first and were already inside the facility when the Plaintiff and Adam arrived. The group was greeted by an employee of the Defendants and escorted to a batting cage within the facility. The batting cage is rectangular in shape and the sides are made of metal chain link fence. The only entrance to the batting cage is a door located at the “batting end” of the batting cage.
When they reached the batting cages, the Plaintiff realized that Adam had forgotten his baseball bat in the car. The Plaintiff left to retrieve the bat and returned to the batting cage a few minutes later. Upon her return, the Plaintiff found Adam standing at the batting end of the batting cage while the rest of the group stood at the opposite end near the pitching machine. The Plaintiff stepped inside the door to the batting cage and handed the baseball bat to Adam. The Plaintiff then stepped out and watched her son stand near the home plate inside the batting cage. Several balls were pitched towards Adam to “set up” the pitching machine. The Defendants concede, for summary judgment purposes only, that they provided no written warnings around the batting cage concerning its safe use. Furthermore, the Defendants concede, for purposes of this motion, that they did not provide verbal warnings or protective batting helmets to any member of the group.
The machine stopped after pitching eight to twelve balls in Adam’s direction. At that time, the Plaintiff overheard the Defendants’ employee tell Jan Carpenter that Adam and Brett could share a single batting cage. At that point, the Plaintiff entered the batting cage where Adam was standing without alerting him that she was entering.[4] The Plaintiff stepped into the batting cage just as Adam took a practice swing and inadvertently struck the Plaintiff in the right cheek with the bat. The Plaintiff suffered a fractured cheekbone in three places and a cut which required several months of followup care. She also has a visible scar below her right eye.
DISCUSSION
1. Summary Judgment Standard
The court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983); Community Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). “Summary judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso, 390 Mass. at 422 (1983) (citations omitted). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is satisfied, the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, to determine the credibility of any witnesses or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). Moreover, “[t]he evidence is ‘considered with an indulgence in the [opposing party’s] favor.’ ” Anthony’s Pier Four v. Crandall Dry Dock Eng'g, Inc., 396 Mass. 818, 822 (1986), quoting National Ass’n of Gov't Employees v. Central Broad. Corp., 379 Mass 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). However, “[a] complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
In determining whether there are genuine issues of material fact, the court may consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community Nat’l Bank, 369 Mass. at 553; Mass.R.Civ.P. 56(c). The party opposing summary judgment cannot defeat the motion simply *14 by resting on the pleadings and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If the moving party does not bear the burden of proof at trial, it may demonstrate the absence of a genuine issue of material fact by submitting evidence that negates an essential element of the other party’s claim, or by showing that the other party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass 805, 809 (1991).
“Summary judgment is seldom sought or granted in negligence actions.” Manning v. Nobile, 411 Mass. 382, 388 (1991), quoting Inferrera v. Sudbury, 31 Mass.App.Ct. 96, 103 (1991). This is because negligence claims so often involve disputed questions of fact. Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994), citing Mullins v. Pine Manor Coll., 389 Mass. 47, 65 (1983); Solimene v. B. Gravel & Co., KG, 399 Mass. 790, 794 (1987). However, even in negligence actions, summary judgment is appropriate if no rational view of the evidence permits a finding of negligence. Roderick, 36 Mass.App.Ct. at 949, discussing Mullins, 389 Mass. at 56.
2. The danger of entering an occupied batting cage is open and obvious.
The Plaintiff contends that the Defendants had a duty to provide her with warnings and instructions on the safe use of batting cages by parents and their children. The existence of a duty of care is a question of law properly decided by the court. Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624, 629 (1989). Bergendahl v. Massachusetts Elec. Co., 45 Mass.App.Ct. 715, 724 (1998). Generally, an owner or possessor of land owes a “duty of reasonable care to all persons lawfully on the premises.” O’Sullivan v. Shaw, 431 Mass. 201, 204 (2000); Davis v. Westwood Group, 410 Mass. 706, 716 (1991). “This duty includes an obligation to ‘maintainO his property in a reasonably safe condition in view of all the circumstances, including the' likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.’ ” Id., quoting Mounsey v. Ellard, 363 Mass. 693, 708 (1973). A landowner's duty of reasonable care also includes a duty to warn lawful visitors of hazards which he knows or should know exist on the premises. Id., citing Davis, 410 Mass. at 716. However, a landowner generally owes lawful visitors no duty to warn of “dangers that would be obvious to persons of average intelligence.” Id., and cases cited. Restatement (Second) of Torts §343A(1) (1979); J.R. Nolan & L.J. Sartorio, Tort Law §336, at 89-90 (2d ed. 1989). Whether a risk of harm is open and obvious requires objective analysis of what would be obvious to a person of average intelligence without reference to “dangers subjectively ‘known’ to the plaintiff.” Id. at 210 n.3. See also LeBlanc v. Atlantic Bldg. & Supply Co., 323 Mass. 702, 705 (1949).
In this case, the Plaintiff sustained her injury when she entered a batting cage without alerting the batter and was struck by the bat as he took a practice swing. Whether or not the sport of baseball remains our national pass time, a person of average intelligence understands, at the very least, that baseball involves a batter swinging at a ball with a bat when the ball is thrown in his direction. One need understand no more about baseball than this to appreciate the fact that certain dangers inhere to both baseball spectators and participants.[5] In any case, whether in the context of a live game or batting practice in a batting cage, the dangers created by the swinging of bats and hurling baseballs are readily apparent. See Thorson v. Mandell, 402 Mass. 744, 748 (1989) (“There is no duty to warn of dangers obvious to persons of average intelligence”). The fact that the Defendants employed metal chain link fencing to separate and isolate the batters from others in the area further alerts those on the premises that these dangerous activities occur within the batting cages. The chain link fencing which forms the sides of the batting cage allows visitors outside to see into the batting cage and watch others take batting practice. A person of average intelligence would recognize, in these circumstances, the risk of injury involved in entering a batting cage which is currently in use.
The Plaintiff argues in her opposition to summary judgment that she did not see her son take any practice swings while she stood outside the batting cage and, therefore, the danger was not open and obvious. The Plaintiff suggests that a danger is not open and obvious unless “the person [has] a veritable reason to be wary.” Plaintiffs Memorandum of Law, p. 5. However, the Plaintiff cites no authority for this proposition and the court is aware of none. Rather, the applicable standard contemplates what should be obvious to a person of average intelligence, not what she actually perceives. Here, a person of average intelligence in the position of the Plaintiff would perceive a child with a baseball bat standing inside a metal chain link batting cage, and would have also observed baseballs being pitched in the direction of the child holding the bat. Regardless of whether the person of average intelligence actually saw the child swing the bat prior to entering the batting cage, the person of average intelligence should realize that a child inside a batting cage might impulsively swing his bat. An occupied batting cage located within a batting cage facility is an open and obvious danger of which the landowner is under no duty to warn. The hazards associated with the Defendants’ batting cage operation is of such a character that the landowner may properly assume visitors know of the danger and “ ‘any further warning would be an empty form’ that would not reduce the likelihood of resulting harm.” O’Sullivan, 431 Mass at 204 quoting LeBlanc, 323 Mass. at 705.
*15 3. The Plaintiffs injury was a reasonably foreseeable consequence of the Defendants’ failure to provide Adam Piantedosi with a helmet.
In addition to her claim that the Defendants breached their duty to warn of known hazards on the premises, the Plaintiff also claims that the Defendants’ failure to provide Adam with a helmet caused her to enter the batting cage to remove her son from harm’s way. Generally, the plaintiff in a negligence case must prove that the defendant’s negligence proximately caused her injury. Young v. Atlantic Richfield Co., 400 Mass. 837, 842 (1987); Bellows v. Worcester Storage Co., 297 Mass. 188, 197 (1937); Stone v. Williams, 64 N.Y.2d 639, 642, 474 N.E.2d 250 (1984); W.L. Prosser & W.P. Keeton, Torts 426-27 (5th ed. 1984). To warrant a finding of proximate cause, the plaintiff must prove that her injury was a foreseeable result of the defendant’s negligence. Jorgensen v. Massachusetts PortAuth., 905 F.2d 515, 522 (1st Cir. 1990). The issue of the causal relationship between the negligent acts or omissions of a defendant and a plaintiffs injury is a question of fact for the jury. Johnson v. Summers, 411 Mass. 82, 88 (1991). However, the court may properly decide, as a matter of law, that the harm suffered is sufficiently remote from the defendant’s negligence that no reasonable jury could find that the injury was a reasonably foreseeable consequence. Westerback v. Harold F. LeClair Co., Inc., 50 Mass.App.Ct. 144, 146 (2000), and cases cited. See Migliori v. Airborne Freight Corp., 426 Mass. 629, 633 (1998) (“The requirements of spatial and temporal proximity are even more obviously grounded in practical need to draw a determinate line against excessive liability ... In general, we must acknowledge that these requirements of proximity are based more on the pragmatic need to limit the scope of potential liability, than on grounds of fairness or other imperatives of corrective justice”).
Under the so-called “danger invites rescue” doctrine first articulated in Wagner v. International Ry. Co., 232 N.Y. 176, 133 N.E. 437 (1921),[6] the negligent conduct which puts one in peril is the proximate cause of an injury sustained by his rescuer. Barnes v. Geiger, 15 Mass.App.Ct. 365, 368 (1983). This doctrine is established in Massachusetts. Hopkins v. Medeiros, 48 Mass.App.Ct. 600, 603 (2000). It applies in cases in which “(1) the defendant was negligent to the person rescued and such negligence caused the peril or appearance of peril to the person rescued; (2) the peril or appearance of peril was imminent; (3) a reasonably prudent person would have concluded such peril or appearance of peril existed; and (4) the rescuer acted with reasonable care in effectuating the rescue.” 65 C.J.S. Negligence §222 (2000). McCoy v. American Suzuki Motor Corp., 961 P.2d 952, 956 (Wash. 1998). To qualify for rescuer status, the plaintiff must undertake more than a mere investigation. Barnes, 15 Mass.App.Ct. at 371. The rescuer must act to intervene on behalf of one in imminent danger. Id. Furthermore, in order to recover, the injury must occur during or close in time to the rescue. See Toney v. Zaryneff's Inc., 52 Mass.App.Ct. 554, 564-65 (2001).
In this case, the Plaintiff alleges that she “entered the batting cage to remove her son from the danger she perceived and to confront the employee about the utter disregard for her child’s safety.” Plaintiffs Memorandum of Law at 11. As stated above, when ruling on a motion for summary judgment, the court is not permitted to weigh the evidence, determine the credibility of any witnesses or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). It is unclear from the materials submitted on the motion for summary judgment whether the Plaintiffs annoyance with the Defendants’ management of the facility or a compulsion to protect her child caused her to enter the batting cage. Because the Plaintiff s purpose for entering the batting cage is ambiguous, it is for the jury to resolve whether or not the Defendants’ conduct caused her to attempt a rescue.
Additionally, the question of whether the Plaintiff s conduct was reasonable in light of the situation confronting her is a matter for the jury. Tri-State Wholesale Associated Grocers, Inc. v. Barrera, 917 S.W.2d 391, 397 (Tex.App. 1996). See Provenzo v. Sain, 23 N.Y.2d 256, 296 N.Y.S.2d 322, 244 N.E.2d 26 (1968) (rescue doctrine is applicable so long as rescuer reasonably believes the victim is in peril). Here, the testimony offered on the motion for summary judgment suggests that the pitching machine paused and then the Plaintiff entered the batting cage. There is no indication in the record of why or for how long the pitching machine stopped. Whether the Plaintiff acted reasonably by entering at that point must be resolved by a jury. Furthermore, in light of the fact that the pitching machine stopped before the Plaintiff entered the batting cage raises a question, not appropriate for resolution on summary judgment, whether Adam was in imminent peril at the time the Plaintiff stepped through the batting cage door. Based on the evidence presented, the court cannot rule, as a matter of law, that the Defendants’ actions or omissions did not proximately cause the Plaintiffs injury.
ORDER
Therefore, it is ORDERED that the Defendants’ motion for summary judgment be ALLOWED with respect to the Plaintiffs claim of negligent failure to warn of hazardous conditions on the premises and DENIED with respect to the claim of negligent failure to provide safety equipment to Adam Piantadosi.

 The relevant facts recited herein are taken from the undisputed facts of the parties submitted pursuant to Superior Court Rule 9A(b)(5) unless otherwise specified.

 The Defendants allege that the Plaintiff entered the batting cage to speak with the employee because she became annoyed upon hearing that Adam and Brett would have to share a batting cage. Conversely, the Plaintiff alleges that she entered to remove Adam from the batting cage and voice her safety concerns to the employee. For purposes of this motion, the court assumes the facts as presented by the Plaintiff.

 The record indicates not only that the Plaintiff attended all of her son’s baseball games during the Spring of 1997 prior to her injury, but also that she played some softball in her high school gym class.

 With characteristic elegance, Justice Cardozo wrote as follows:
Dangep invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. The state that leaves an opening in a bridge is liable to the child that falls into the stream, but also to the parent who plunged to its aid . . . The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path.
Wagner, 133 N.E. at 437-38.