KENNETH D. FUND, administrator,[1] *vs.* HOTEL LENOX OF
BOSTON, INC., & another.[2]

Suffolk. April 5, 1994. - July 7, 1994.

Present: WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Practice, Civil*, Summary judgment. *Negligence*, Duty to prevent harm,
Foreseeability of harm, Hotel.

In a wrongful death action brought against a hotel and its management
arising from the stabbing death of a guest in her hotel room by an
unknown assailant, the judge incorrectly allowed the defendants' mo-
tion for summary judgment where the plaintiff had produced sufficient
evidence to warrant a jury's finding that the failure of the hotel to take
reasonable precautions to protect its guests created a reasonably fore-
seeable risk that an intruder would gain access to the hotel and harm a
guest. [192-195]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 1, 1990.

The case was heard by *Hiller B. Zobel*, J., on a motion for
summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*William H. Carroll* (*Antonette S. Fernandez* with him)
for the plaintiff.

*Alice Olsen Mann* for the defendants.

WILKINS, J. Karen Edwards, a thirty-four year old attor-
ney from Clearwater, Florida, was stabbed to death on June
1, 1989, in room 624 of the Lenox Hotel (Lenox) in Boston.
She had checked into the Lenox minutes before. Her mur-

[1] Of the estate of Karen A. Edwards.

[2] Saunders Hotel Company, Inc. The defendants state that the Lenox
Hotel is owned by Hotel Lenox of Boston, Inc., and managed by Saunders
Hotel Company, Inc.

derer was never identified. In this action the plaintiff, as administrator of Karen Edwards's estate, seeks damages for her wrongful death (G. L. c. 229, § 2 [1992 ed.]) and pain and suffering against the corporate owner and corporate manager of the hotel, respectively. We shall refer to the defendants collectively as the hotel.

The hotel moved for summary judgment. A judge of the Superior Court asked the plaintiff to assemble all the evidence on which he relied to meet his burden of proof. The plaintiff did so. In such a circumstance, the question before the motion judge was whether the evidence produced, viewed most favorably to the plaintiff, was sufficient to support the plaintiff's claim. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). The judge concluded that the plaintiff had failed to establish "the necessary causal relationship between Defendants' negligence (if any) and the decedent's death." Judgment was entered for the defendants. We transferred the plaintiff's appeal to this court on our own motion. We order that the judgment for the defendants be vacated.

The hotel justifies the judge's ruling solely on the basis that the plaintiff failed to show the necessary causal connection between the hotel's alleged negligence and the stabbing. Therefore, for the purposes of the summary judgment proceedings, we assume that there was sufficient evidence that the hotel violated a duty of care owed to its guests and particularly to Karen Edwards. This case squarely puts the question whether, in circumstances in which the assailant is not identified as a person who was unlawfully on the hotel premises, causation justifying liability may be warranted on the record. In traditional tort terms, the question is whether the plaintiff has demonstrated, on the summary judgment record, that a jury would be warranted in concluding that it was more probable than not that the stabbing of Karen Edwards was within the reasonably foreseeable risk of harm created by the hotel's negligence. See *Flood* v. *Southland Corp.*, 416 Mass. 62, 73 (1993); *Mullins* v. *Pine Manor College*, 389 Mass. 47, 58 (1983); *id.* at 67 (O'Connor, J., dissenting); *Carey* v. *New Yorker of Worcester, Inc.*, 355 Mass.

450, 454 (1969). Another way of stating the issue is whether reasonable security measures probably would have prevented the type of crime that resulted in Edwards's death. See *Sharpe* v. *Peter Pan Bus Lines, Inc.*, 401 Mass. 788, 793 (1988).

In order to determine whether the stabbing of Karen Edwards could have been a reasonably foreseeable consequence of the hotel's negligent breach of its duty to its guest, we must first recite various facts on which the plaintiff relies in asserting that the hotel was negligent.

The hotel is in a medium to moderately high crime area. It was routine to remove transients and other trespassers from the hotel. The hotel was also aware of many incidents of larceny from hotel rooms and motor vehicles, purse-snatchings, other robberies in the alley, and break-ins, including four during the two weeks before the murder. The hotel was aware of numerous nonviolent crimes and an occasional violent crime, such as a rape and a stabbing, in the Lenox Hotel and two nearby hotels that were monitored by the same security personnel. In particular, the hotel knew its fire escape was used to gain unauthorized access to the hotel and that break-ins were occurring with some frequency in rooms connected to or close to the hotel's fire escape. The room assigned to Edwards was close to the fire escape and across a hall from an unsecured stairwell whose entry was not monitored by the hotel's security cameras. Following the murder, a knife alleged to be the murder weapon was found on the floor below Edwards's room.

The hotel had a security system that could be found to fail to meet the standard of reasonableness. At the time Edwards was stabbed, there was only one security officer on duty, assigned to cover the hotel and another hotel five blocks away. The alarm system on the fire escape repeatedly failed to detect intruders using it to gain access to rooms. A dumpster was located so that it facilitated access to and from the fire escape. No cameras monitored the door to room 624. At the time of the murder, cameras were not taping sixth floor guest areas and the quality of pictures from security cameras was

"totally inadequate." There was no doorman at one hotel entrance at the time of the murder. Generally the industry agrees that there should be patrols on guest room floors. A former head of security at the hotel stated in a deposition that, only six months before the murder, he perceived the security operation at the hotel to be "in a pretty substantial state of disarray." There was, he said, no preventive patrolling. He also stated that a single security officer shared between two hotels was inadequate security.

Before her arrival at the hotel, Edwards had called to request that a refrigerator be placed in her room so that she would not have to leave the room in the evening. She brought food with her in a cooler. The refrigerator was not there when she arrived at the room shortly after checking in at 8:05 P.M. She phoned the desk, and a hotel employee told her that the refrigerator would be sent up promptly. At that time there was no security guard at the hotel. After approximately thirty minutes, a hotel employee arrived at the room. He believed the door was bolted from the inside because he could not gain access with his pass key. He attempted to call, but the line was busy. The next day Edwards's body was discovered wedged against the door to her room. The phone was off the hook. There was no evidence of a forced entry. The assailant took $200 from Edwards's wallet.

The plaintiff's evidence certainly would warrant a finding that the failure of the hotel to take reasonable precautions to protect its guests created a risk that an intruder, bent on stealing guests' property, would be able to gain undetected access to the hotel, its corridors, stairwells, fire escape, and rooms. These circumstances created the risk that a guest would encounter such an intruder who would act violently to prevent his identification and apprehension and to achieve his larcenous objective.

The issue becomes more difficult, however, because the record does not show that the killer definitely was an intruder, one against whom reasonable security precautions were intended to act as a deterrent. The hotel suggests that the assailant could just as easily have been a guest in the

hotel or a guest's visitor. The likelihood of that being so is not great. The inference is not strong that a hotel guest, whose identity is known because of registration as a guest, would rob and stab another guest in her room. A visitor to a guest who might do such a thing stands in much the same position because of the risk of identification. The absence of reasonably adequate means of detecting intruders and the hotel's failure to control and monitor intruders' means of access to and egress from the hotel indicate that the risk of harm from an intruder was enhanced by the hotel's negligent omissions. That risk was sufficiently great that the less plausible possibility, that the assailant was a guest or some other person authorized to be in the hotel, should not bar the plaintiff from submitting his case to a trier of fact. On the summary judgment record a trier of fact would be warranted in concluding "that it was more probable than not that the assailant was a trespasser." *Mullins* v. *Pine Manor College*, 389 Mass. 47, 59 (1983).

Summary judgment for the defendants is vacated.

*So ordered.*