DEIRDRE A. GRIFFITHS, executrix,[1] *vs.* THOMAS J. CAMPBELL, trustee,[2] & another.[3]

Norfolk. March 4, 1997. - May 15, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, & MARSHALL, JJ.

*Negligence,* One owning or controlling real estate, Foreseeability of harm, Duty to prevent harm. *Landlord and Tenant,* Landlord's liability to third person.

The murder of a police officer executing a search warrant in an apartment building was not reasonably foreseeable by the owner-landlords of the building based on what they knew or should have known, as established in a civil action brought against them on behalf of the police officer's estate, and the defendants' motion for judgment notwithstanding the verdict should have been allowed. [33-36]

CIVIL ACTION commenced in the Superior Court Department on February 14, 1991.

The case was tried before *Elizabeth Butler,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Francis M. Lynch (William P. Smith* with him) for the defendants.

*Mark Newman (Timothy M. Burke* with him) for the plaintiff.

ABRAMS, J. A jury determined that the defendants, Thomas J. Campbell and Bonnie J. Glenn, were civilly liable to the plaintiff, Deirdre A. Griffiths, executrix of the estate of Sherman C. Griffiths, for the death of her husband, Detective Sherman C. Griffiths of the Boston police department.[4]

---

[1]Of the estate of Sherman C. Griffiths.

[2]Of the Bellevue Realty Trust and individually.

[3]Bonnie J. Glenn.

[4]For cases arising out of similar set of facts, see *Commonwealth* v. *Luna,* 418 Mass. 749 (1994); *Commonwealth* v. *Lewin (No. 3),* 408 Mass. 147 (1990); *Commonwealth* v. *Lewin,* 405 Mass. 566 (1989).

The defendants, cobeneficiaries of the Bellevue Realty Trust, appeal from the denial of their motions for directed verdict and judgment notwithstanding the verdict. The defendants assert that the plaintiff's evidence was insufficient as a matter of law to impose liability on them and, therefore, it was error to deny their motions. We granted the defendants' application for direct appellate review. We conclude that the evidence was insufficient to warrant the imposition of liability. The defendants' motions for judgment n.o.v. should have been allowed.

Campbell, an accountant, and Glenn, the principal of a real estate firm, bought the apartment building located at 102-104 Bellevue Street, in the Dorchester section of Boston, in March, 1987. Campbell was the day-to-day manager, supervising any renovations and collecting the rents. The tenants remained the same after the purchase as before (with one irrelevant exception).

The plaintiff offered the following evidence.[5] A Boston police officer said that, on April 2, 1987, after observing heavy foot traffic in the building, he made a drug-related raid and arrest on the defendants' premises. Break-ins were common at apartment no. 104-3. After one of the break-ins, two or three weeks before the police raid which resulted in the shooting of Detective Griffiths, a different door was installed to apartment no. 104-3. The door had a hollow "peephole" below the traditional peephole and two "two by fours" were used to bar the inside of the door. After the new door was installed, transactions would occur by having the buyer put money through the lower peephole in the door. Drugs were pushed out the same hole to the buyer.[6]

Campbell would visit the building to collect rent and, at other times, would be present when contractors were doing work in the apartments. When Campbell collected rent for apartment no. 104-3, he would be met by different individuals who claimed to be the occupant's brother or cousin. Campbell was never able to see all the apartment.

The plaintiff's expert said that the defendants were

---

[5]We view the facts in the light most favorable to the plaintiff. See *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 659 (1996).

[6]One downstairs tenant said that soon after she moved into the building she became aware that there was drug dealing upstairs and she began going there to buy drugs herself.

negligent in two respects: first, that Campbell should have noti-
fied the police department and relayed any suspicions he had
concerning drug activity in the apartment building; and, second,
that Campbell was remiss in failing either to remove the heavily
secured door or in allowing the tenant to have the door installed
in the first place. The defendants argue that their motions for a
judgment n.o.v. should have been allowed because the homicide
was not reasonably foreseeable based on what the landlord
knew or should have known. We agree. As a matter of law, the
murder of Detective Griffiths was not reasonably foreseeable by
the defendants.

The plaintiff highlights the following points in support of her
argument that Campbell should have been aware of drug sales
in his building: he was aware of the prior drug arrest in the
apartment building; an inference that, because Campbell was on
the premises often, he would have noticed excessive foot traffic
in and out of the apartment building; testimony from two work-
ers that a "casual observer" would have been aware of drug
traffic; imputed knowledge to the defendants that this was a
neighborhood known for its drug use[7]; and a suspicion of illegal
activities based on the facts that minimal furniture was in the
apartment and that the apartment was not heated. A final point
highlighted by the plaintiff is that Campbell only once met the
occupant of the apartment, and usually dealt with other people.
These other people were "of Jamaican descent who paid the
rent in cash, wore gold jewelry, drove new leased cars and
claimed to be relatives of the missing lessor." According to the
plaintiff, "These facts would make any reasonable person suspi-
cious." The plaintiff attempts to strengthen her claim by sug-
gesting that Campbell assisted with the illegal drug activity by
installing an intercom system[8] and a metal-clad door on apart-
ment no. 104-3.[9]

The plaintiff argues that, even if the landlord did not install

[7]The plaintiff did not offer any evidence of drug arrests in this particular
section of Dorchester with the exception of the arrests directly related to this
case.

[8]The evidence as to the reason that the intercom system was installed was
that it was in response to a complaint of a tenant on the first floor who did not
want to be disturbed by people visiting the third floor of the building.

[9]The plaintiff introduced a check and check stub from Campbell to a
contractor for the installation of two doors. The stub read that the doors
installed were for "104-2 and O/S" and were for apartment no. 104-2 and

the metal-clad door, he had a legal obligation to remove it. We do not agree. According to the testimony, the new door was installed subsequent to a break-in of the apartment. A landlord need not risk liability by ordering a tenant to remove a secure door and to install a less secure door. The landlord's duty is to provide a safe residence for the tenants.

Landlords may be liable for ignoring criminal activities that occur on premises and were known or should have been known to them. See *Fund* v. *Hotel Lenox of Boston, Inc.*, 418 Mass. 191 (1994).[10] Landlords have a responsibility to protect persons on their property from reasonably foreseeable risks of harm. *Young* v. *Garwacki*, 380 Mass. 162, 170 (1980). We have said that a landlord or property owner may be liable for failing to prevent reasonably foreseeable criminal acts. See, e.g., *Poskus* v. *Lombardo's of Randolph, Inc.*, 423 Mass. 637, 639 (1996); *Fund* v. *Hotel Lenox of Boston, Inc.*, *supra* at 192; *Flood* v. *Southland Corp.*, 416 Mass. 62, 72-73 (1993); *Sharpe* v. *Peter Pan Bus Lines, Inc.*, 401 Mass. 788, 792-793 (1988); *Mullins* v. *Pine Manor College*, 389 Mass. 47, 62-63 (1983). See Restatement (Second) of Property, Landlord and Tenant, § 17.3 comment 1, at 197 (1977).

A landlord "is not a guarantor of the safety of persons in a building's common area. A landlord is not free, however, to ignore reasonably foreseeable risks of harm to tenants, and others lawfully on the premises, that could result from unlawful intrusions into common areas of the leased premises." *Whittaker* v. *Saraceno*, 418 Mass. 196, 197 (1994).

In *Whittaker, supra,* we focused on the foreseeability of the criminal conduct and the ability to prevent that conduct. *Id.* at 197-201. In that case, we held that the landlord of a commercial office building could not be held liable for negligence for failing to prevent an attack against a woman who worked in the office building because the landlord could not have rea-

---

for the outside front door. The plaintiff did not offer any evidence linking this check to the installation of the door to apartment no. 104-3.

[10]The plaintiff also argues that Campbell's failure to object to the tenant's use of the "two by fours" was a proximate cause of the shooting. No evidence was offered that a police lock or other heavy duty security device more commonly accepted by the plaintiff's expert would have led to a different result from the use of the "two by fours" used to secure the door to apartment no. 104-3. Therefore, the landlord's acquiescence to the method used to secure the door cannot be said to be a proximate cause of the shooting.

sonably foreseen the attack. *Id.* at 197. No prior attacks had occurred in that building and there was no evidence to suggest that the landlord should have been aware of the heightened potential of a criminal act. *Id.* at 200. Compare *Sharpe, supra* (bus company failed to provide adequate security at terminal despite numerous previous attacks).

Further, the cases in which we have imposed liability are those in which a person legally on the premises is attacked, and the owner or landlord knew of or should have known of both the previous attacks and the potential for a recurrence based on a failure to take measures to make the premises safer. The plaintiff did not offer any evidence of prior shootings. The landlord knew or should have known of one prior drug raid. Here, Detective Griffiths would have been in no better position than he was on the evening of February 17, 1988, had Campbell notified police of his suspicion.[11]

An injury to a police officer who is hurt while engaged in police business cannot be attributed to the landlord based solely on the landlord's failure to notify the police of the landlord's suspicions of illegal activity. Even if Campbell had known that drugs were being sold out of the apartment building and was negligent in not reporting that fact to the police,[12] it was not an omission foreseeable that a police officer would be murdered while conducting a drug raid.[13] In the instant case, there was no evidence of firearms in apartment no. 104-3.

If we were to conclude that a homicide was reasonably foreseeable based on the failure of a landlord to act on a suspicion of illegal drug activity, we would be permitting inference upon inference to impose liability. That we cannot do. "There must be limits to the scope or definition of reasonable foreseeability based on considerations of policy and

[11]The plaintiff argues that Campbell should have told the police of the barricade. The plaintiff asserts that it is a reasonable inference that Campbell saw part of the barricade when collecting the rent. Even if this assertion were true, the police already knew that the door would be difficult to break down.

[12]The police learned of the drug activity and were at the address with a search warrant.

[13]On the result we reach, we need not discuss the so-called fireman's rule. That rule precludes recovery from a negligent third party if the officer's occupation exposes him to a particular risk in his professional capacity. Cf. *Mounsey* v. *Ellard*, 363 Mass. 693 (1973).

pragmatic judgment." *Poskus, supra* at 640. We remand to the Superior Court with an order to allow the defendants' motions for a judgment notwithstanding the verdict and to enter a judgment for the defendants.

*So ordered.*