Sosman, J.
Plaintiff Linda Lanni has brought the present action complaining of injuries she sustained when she was attacked by an unknown assailant on the premises of the Burlington High School. She alleges that school officials were negligent in failing to change the locks after incidents of theft had been reported. The Town of Burlington has moved for sum-maryjudgment.[1] For the following reasons, the motion is allowed.
Facts
In the spring of 1994, the Town of Burlington contracted with plaintiff Linda Lanni to have Lanni provide and arrange instruction for the high school band majorettes. Instruction was to be provided during a two-week period in late August immediately prior to the start of the school year. The majorettes and the instructors would be using the high school premises, including various rooms just off the high school auditorium.
At the time she was hired, Lanni was told that the locks to the rooms in question were going to be changed and that she would be issued a key after-wards. The auditorium was periodically rented out to various groups, and the keys provided to those renters were not always returned. Due to the number of unreturned keys in circulation, the high school planned to change the locks on the auditorium and its surrounding rooms.
Lanni began her training program with the majorettes on August 22, 1994. She was given a key to the rooms she would be using. Unbeknownst to Lanni, the locks had not been changed as of that date.
During the training sessions, the student majorettes would leave equipment and personal belongings in the rooms adjacent to the auditorium and conduct their practice out on the field. Lanni saw to it that the rooms were locked before the group went out for each practice session. Despite her precautions, there were several separate incidents of theft from purses and wallets left in those rooms. On each occasion, Lanni alleges that she had left the rooms locked and that the doors were unlocked when she and the students got back and discovered that money was missing. On no occasion did she see any sign of forced entry. Lanni reported each of these thefts to the principal’s office, expressing her concern about the lack of security.
On September 1 at around 8:30 a.m., Lanni arrived at the auditorium and went to open up the rooms for that day’s session. She found one of the doors unlocked,[2] did not observe any sign of forced entry, and proceeded into that room. Once inside, she was grabbed from behind and beaten by a man wielding an object that looked like a screwdriver.
Lanni did not recognize her assailant, and no one has been identified as the perpetrator of this crime. Lanni does not know how the perpetrator gained access to the room.
On January 6, 1995, Lanni’s attorney sent the Town Clerk a G.L.c. 258 demand letter seeking compensation for the injuries Lanni sustained in the attack. That letter made no mention of Lanni’s husband (plaintiff Albert Lanni), nor did it reference her marital status. No demand letter was submitted by or on behalf of Albert Lanni.
Discussion
Lanni contends that the Town was negligent in failing to change the locks after receiving notice that there had been thefts of money in the rooms adjacent to the auditorium. In order to prevail on her negligence claim, Lanni must show that the Town’s failure to change the locks proximately caused the assault. In the absence of specific evidence as to the identity of the perpetrator or his precise means of access, plaintiff may still meet her burden if she has evidence of surrounding facts and circumstances that make it more likely that the perpetrator gained access by means of one of the keys left in the hands of a former renter than by some other method. She does not have to rule out other possible explanations as to how the perpetrator gained access as long as she can show that the defendant’s negligence is a more likely explana *72 tion. See Fund v. Hotel Lenox of Boston, Inc., 418 Mass. 191 (1994).
To prove the requisite causal link between the failure to change the locks and the perpetrator’s gaining access to the room, Lanni must first provide some basis for concluding that the perpetrator more probably than not got into the room by using a key. Lanni now alleges (contrary to the version of events set forth in her complaint (¶23)), that she found the door unlocked when she arrived that morning and proffers her untrained observation that there was “no sign of forced entry.” She also claims that, following the prior thefts from those same rooms, she observed that a previously locked door was unlocked and that there was no sign of forced entry. From these facts, she argues that the jury could infer that her attacker gained entry by use of a key.
It would be reasonable to infer that the earlier thefts were more likely than not perpetrated by someone with a key. Where Lanni had locked the doors just prior to leaving for the field with her students, and where the thefts took place during the day when other people were about (who could, for example, observe someone trying to pick the lock), it would be reasonable to conclude that someone who had a key, and who could thereby quickly and quietly enter the rooms, locate money, and leave without a trace, would be the most likely perpetrator.
As to the attack on Lanni, however, the inference is somewhat more strained. Lanni’s assailant must have gained access to the room prior to 8:30 a.m. Lanni had locked the room when she left the previous afternoon, but has no knowledge as to whether some authorized person (e.g., a janitor or cleaning person) had opened the door and left it unlocked at some later point. Or, given that an intruder could work on a lock for a long time during the early morning hours with minimal fear of being observed, it is also distinctly possible that the intruder bypassed the lock in ways that would not leave any sign of forced entry that could be observed by the untrained eye.
Assuming (without deciding) that Lanni has sufficient evidence to permit the inference that her assailant got into the room using a key, Lanni does not have any evidence to suggest that the intruder more probably than not got that key from one of the prior renters such that changing the locks would have deterred his entry. Changing the locks would not have had any effect on those persons who were authorized to have keys, as such persons would have been reissued keys fitting the new locks. The only keys that would have been disabled by changing the locks were those keys that were still in the hands of the prior renters. Thus, Lanni must show that it is more probable than not that the intruder got his key from that source as opposed to some other source.
There is simply no evidence making that particular source of a key more likely than the other possible sources. Lanni contends that, because she did not recognize her attacker as anyone she knew at the school, he was not himself authorized to have a key. Of course, Lanni’s only connection to the school was that of a temporary instructor at a two-week session held prior to the start of the school year. Lanni is not in any position to know all of the persons who work for or are affiliated with the high school that might be authorized to have keys for legitimate purposes. Even if one assumes that the intruder himself was not authorized to have a key, there is no indication as to how this person got a key. He could have stolen a key from someone who was authorized to have it, or could have broken into some other part of the school premises and found key(s) there. He could have been working in concert with someone who was authorized to have keys. While it is certainly possible that he was one of the renters of the auditorium, kept an old key from that rental, and later used the key to perpetrate this crime, or that he stole the key from one of those prior renters, there is nothing that makes those sources of keys more likely than some other source.
All that Lanni can show is that failure to change the locks after rental keys had not been returned is a possible cause of her injuries. However, where there are other explanations as to how her assailant gained access, where those other explanations do not involve any negligence on the part of the Town, and where those other explanations are at least equally probable, plaintiff can not meet her burden of showing that it is more probable than not that the Town’s negligence caused her injury.[3]
ORDER
For the foregoing reasons, defendant Town of Burlington’s Motion for Summary Judgment is ALLOWED and it is hereby ORDERED that judgment be entered in favor of defendants.

 Claims against individual Town employees and against the School Committee were previously dismissed, as the Town is the only proper defendant in this claim alleging negligence by public employees. G.L.c. 258, §1 and §2.

 Lanni’s original complaint and her amended complaint (¶23) alleged that Lanni herself unlocked the door. Lanni’s affidavit now states that she found the door unlocked when she arrived.

 With regard to plaintiff Albert Lanni, his loss of consortium claim is also defective for failure to file any claim letter. G.L.c. 258, §4. A timely administrative claim by Linda Lanni seeking recovery for her own injuries does not satisfy the filing requirement for her husband’s loss of consortium claim.