ALBERT MONROE TONEY, THIRD, & others[1] *vs.* ZARYNOFF'S, INC., T-A DING HO RESTAURANT I & II & another.[2]

No. 99-P-1095.

Worcester. May 3, 2001. - September 20, 2001.

Present: PORADA, KANTROWITZ, & COHEN, JJ.

*Negligence,* Wrongful death. *Wrongful Death. Jury and Jurors. Evidence,* Police report, Relevancy and materiality. *Negligence,* Foreseeability of harm. *Practice, Civil,* Instructions to jury.

At the trial of a civil action alleging claims of negligence and wrongful death, in which the evidence at trial revealed that there was a homosexual relationship between two of the plaintiffs, the judge did not abuse his discretion in declining to question the venire regarding any bias against homosexuals, where the judge specifically recognized that the plaintiffs' homosexuality was extraneous to the issues of duty, breach of duty, and causation; was cognizant of the potential risk of focusing the jurors' attention on this subject; and chose to deal with the subject in the form of an instruction to the jury [556-559]; and where it was unlikely that the question, even if asked, would have affected the outcome of the case [559-560].

Discussion of the necessity, and procedure, for a voir dire about jurors' attitudes toward homosexuals when one of the parties in a civil case is homosexual. [560-561]

At the trial of a civil action alleging claims of negligence and wrongful death arising out of an assault on patrons of a restaurant, the judge correctly declined to allow the plaintiffs to introduce certain police reports, offered for impeachment purposes, where the reports did not contradict the defendant's testimony that no customer had previously been injured at the restaurant, and were either too remote in time or bore little resemblance to the assault in question [561-562]; further, the exclusion from evidence of certain relevant newspaper articles, which were merely cumulative of other properly admitted evidence, was harmless error [562-563].

This court declined to consider a claim not properly preserved for appellate review. [563-564]

CIVIL ACTION commenced in the Superior Court Department on October 15, 1993.

The case was tried before *Thayer Fremont-Smith*, J., and a motion for a new trial was heard by him.

[1] Robert Domiano, administrator of the estate of Robert Domiano, Jr., and Kayla Marie Toney, by her father and next friend, Albert Monroe Toney, III.

[2] Babcock-Colton Associates, a Massachusetts limited partnership.

*David A. Wojcik* for the plaintiffs.

*Stephen J. Brown* for Zarynoff's, Inc., T-A Ding Ho Restaurant I & II.

*John A. Wickstrom* for Babcock-Colton Associates.

PORADA, J. On the evening of September 29, 1991, the plaintiff Albert Monroe Toney, III, and Robert Domiano, Jr., were dining with friends at the Ding Ho restaurant owned by the defendant Zarynoff's Inc., T-A Ding Ho Restaurant I & II (Ding Ho) and located in a building owned by the defendant Babcock-Colton Associates (Babcock) at 38 Southbridge Street in Worcester. When Toney, an off-duty Worcester police officer, went to pay the bill, he observed the operator of the restaurant, John Ng, engaged in a heated argument with three men over Ng's refusal to serve them take-out food. When Toney saw one of the men, later identified as Curtis Johnson, spit in Ng's face, he decided to intervene. Toney identified himself as a police officer, displayed his badge, and requested that the three men leave the restaurant. The three men then turned their attention away from Ng to Toney. Johnson, apparently doubting that Toney was a police officer, began yelling profanities at him. Toney responded by asking Johnson's companions to remove Johnson from the restaurant. Within a minute or two, Johnson's two companions persuaded him to leave.

Moments later Toney, Domiano, and their friends also left the Ding Ho. As they did so, they were confronted by Johnson and his two companions, who were standing on the sidewalk outside the restaurant. Toney told his friends to ignore them and walk away. As Toney and his friends walked away, Johnson, without warning, pulled out a gun and shot Toney, then Domiano and a third member of their group. Toney was seriously injured and Domiano died soon after at the hospital. The shooting took place on the sidewalk approximately fifty feet from the entrance to the Ding Ho. Johnson was subsequently apprehended and convicted of the murder of Domiano[3] and the assaults on Toney and their friend.

Based on this incident, Toney and Domiano's administrator

---

[3]The murder conviction was subsequently reviewed on appeal and a new trial was granted. *Commonwealth* v. *Johnson*, 435 Mass. 113 (2001).

brought an action for negligence and wrongful death against the Ding Ho and Babcock in the Superior Court, based principally on their alleged failure to provide adequate security to protect Toney and Domiano from injury by the intentional acts of third persons. A jury returned verdicts for the defendants.

The plaintiffs filed a motion for a new trial alleging that the trial judge had committed reversible error as follows: (1) in refusing to question the jury venire about bias against homosexuals; (2) in failing to allow into evidence sixteen police reports dated prior to August, 1986, relating to criminal activity at and in the neighborhood of the Ding Ho while allowing Ng to testify that no customer of the Ding Ho had ever been injured from 1965 to the date of the shooting; (3) in excluding from evidence three newspaper articles from the Worcester Telegram and Gazette pertaining to criminal activity at and in the neighborhood of the Ding Ho; and (4) in refusing the plaintiffs' requested jury instructions pertaining to the duty of care owed an off-duty police officer, the rescue doctrine, and the duty to warn visitors of dangers of which the defendants knew or should have known. The trial judge denied the motion. The plaintiffs appeal from the judgment and denial of the motion for a new trial on the grounds asserted in their motion for a new trial. We affirm the judgment and the denial of the motion.

We address each of the plaintiffs' claims of error.

1. *The voir dire.* Before empanelment, the plaintiffs requested that the judge question the jury as a whole regarding any bias against homosexuals on the ground that during the trial it would become obvious to the jury that Toney and Domiano were homosexuals. Concluding that their homosexuality was a "totally extraneous issue" which he would "hate to inject" into the case, the judge denied the request but stated that he would give an instruction to the jury that they were to decide the case upon the law and facts without any regard to bias or prejudice. The plaintiffs argued that a curative instruction would come too late and would not alleviate their concern about a biased jury. The judge, nevertheless, declined to ask the question but, as promised, did instruct the jury that they were to decide the case on the evidence and law presented and were not to be swayed by such factors as sympathy, bias or anything of that nature

including whether they approved or disapproved of someone's lifestyle.

Under G. L. c. 234, § 28, first par., a judge is required to question the venire collectively whether any juror "is related to either party or has any interest in the case, or has expressed or formed an opinion, or is sensible of any bias or prejudice, therein . . . ." Similarly, under Mass.R.Civ.P. 47(a), 365 Mass. 812 (1974), a judge is required to ask those questions as well as whether any juror knows of any reason why he or she cannot be indifferent in the case. The judge may also in his discretion propound additional questions to the venire, either upon a party's motion or sua sponte. Mass.R.Civ.P. 47(a). A judge's refusal to ask questions beyond those mandated by § 28 and rule 47(a) will be upheld unless the judge is shown to have committed an abuse of discretion.[4] *Commonwealth* v. *Harrison*, 368 Mass. 366, 371 (1975). *Commonwealth* v. *Bailey*, 370 Mass. 388, 399-400 (1976). *Burke* v. *Gallison*, 7 Mass. App. Ct. 918, 919 (1979). Where a litigant desires that inquiries which raise questions of bias be made to the jury beyond those mandated by statute or rule 47, the litigant must demonstrate that there is a substantial risk that the case will be decided in whole or in part on the basis of an extraneous issue. *Commonwealth* v. *Estremera*, 383 Mass. 382, 387-389 (1981). *Commonwealth* v. *Sheline*, 391 Mass. 279, 291 (1984). This is so whether the litigant desires the question to be asked collectively or in the form of an individual voir dire. *Commonwealth* v. *Estremera*, 383 Mass. at 387-389.

Here, the plaintiffs alleged that, based on the evidence, a reasonably perceptive juror would know that there was a homosexual relationship between Toney and Domiano, and that some people have strong feelings in that regard.[5] While bias against homosexuals may exist in some people, the Supreme

___

[4]A judge may also be required to conduct an individual voir dire of each prospective juror if it appears that a substantial risk exists that an extraneous issue might affect the outcome of the case. G. L. c. 234, § 28, second par. *Commonwealth* v. *Kater*, 432 Mass. 404, 413 (2000). Here, because the plaintiffs did not request an individual voir dire, our analysis is limited to whether the judge abused his discretion in not conducting a collective inquiry of the jury.

[5]The following evidence was introduced at trial. Toney testified that he was divorced and had a five year old daughter, and that Domiano and he were

Judicial Court has not yet determined that there exists an "indurated and pervasive prejudice" against homosexuals as a class, see *Commonwealth* v. *Rhoades*, 379 Mass. 810, 821-822 (1980), and that prospective jurors must be questioned on the subject to determine their bias even in those cases where the homosexuality of one of the parties may be a central issue in the case. See *Commonwealth* v. *Plunkett*, 422 Mass. 634, 640-641 (1996) (while recognizing that juror attitudes toward homosexuality require careful attention, individual voir dire was not required in a murder case where the defendant alleged the victim was a homosexual and made unwanted sexual advances toward him). But see *Commonwealth* v. *Shelley*, 381 Mass. 340, 353 n.11 (1980) (homosexuality might constitute a class under G. L. c. 234, § 28, second par.). Thus, the plaintiffs' allegations that Toney and Domiano were a homosexual couple and that some people have strong feelings about homosexuals were insufficient to demonstrate that the venire from which the jury would be selected would be so infected with those feelings that they could not render an impartial verdict on the evidence presented. Cf. *Commonwealth* v. *Estremera*, 383 Mass. at 387-389 (whether jurors harbored prejudice against psychiatrists); *Commonwealth* v. *Sheline*, 391 Mass. at 291 (whether a juror would believe a police officer over other witnesses).

Nevertheless, where there was the possibility of prejudice against homosexuals among prospective jurors, we think that the better practice would have been to ask the question. *Commonwealth* v. *Ramos*, 31 Mass. App. Ct. 362, 364 (1991) ("[A]ppellate decisions have consistently encouraged trial judges to respond generously to motions that they question jurors individually about possible prejudice"). That said, however, we cannot say that in the circumstances of this case the judge abused his discretion in refusing to inquire about pos-

roommates and traveled together. He also testified that he worked for an AIDS organization and that when Domiano lay dying outside the Ding Ho, he held him in his arms and told him he loved him. In addition, two medical reports which would have been relevant on the issue of damages, which issue was not reached by the jury in their special verdict slip, stated that Toney worked for the Gay and Lesbian Community Coalition and that while Toney was happy with his wife, he was even happier when he got divorced because he realized that that was not his genuine sexual orientation. No evidence of Domiano's sexual preference was introduced.

sible bias against homosexuals where the judge specifically recognized that the plaintiffs' homosexuality was extraneous to the issues of duty, breach of duty, and causation to be decided in this case; was cognizant of the potential risk of focusing the jurors' attention on this subject; and chose to deal with the subject in the form of an instruction to the jury. Cf. *Commonwealth* v. *Estremera*, 383 Mass. at 388 ("Absent some reason to suspect that jurors may be so prejudiced . . . a judge is warranted in relying upon his final charge to the jury to purge any bias from the jurors prior to their deliberations"); *Commonwealth* v. *Pina*, 430 Mass. 66, 73-74 (1999) (judge did not abuse his discretion in failing to conduct an individual voir dire or to inquire collectively of the venire about possible bias toward Cape Verdeans in a murder trial where the judge was "cognizant of the risk of focusing the attention of the jury on the defendant's national origin" and made a determination that no substantial risk of bias existed based on the different national origins of the defendant and the victim).

Nor are we persuaded that the outcome would have been any different if the question had been asked. The plaintiffs bore the burden of proving that the risk of harm against which the landowner or person in control of the premises could have taken reasonable preventive steps was reasonably foreseeable. *Fund* v. *Hotel Lenox of Boston, Inc.*, 418 Mass. 191, 192-193 (1994). In the circumstances of this case, the plaintiffs' proof on this issue was open to considerable doubt. While the plaintiffs introduced evidence of criminal activity afoot in the neighborhood and at the Ding Ho and presented expert testimony that no reasonable security measures were in place at the time of the incident, they had to overcome the fact that once Toney interceded in the argument among Ng, Johnson, and his two companions over Ng's refusal to serve them take-out food, there was no evidence that Johnson and his two companions threatened Toney with harm, committed any violent acts toward anyone, displayed any weapons, or gave any indication that their dispute had not ended with their departure from the restaurant. In light thereof, it is unlikely that the defendants could have reasonably anticipated that moments later, without warning, Johnson would pull out a gun and shoot Toney, Domiano, and a third companion as they walked away from the

restaurant or that any reasonable security measures would have prevented Johnson's precipitous and senseless act of violence. Cf. *Whittaker* v. *Saraceno*, 418 Mass. 196, 197 (1994) (landlord of a commercial office building could not be held liable for negligence for failing to prevent an attack against a woman who worked in the office building because the landlord could not have reasonably foreseen the attack); *Griffiths* v. *Campbell*, 425 Mass. 31, 33 (1997) (murder of a police officer executing a search warrant in an apartment building was not reasonably foreseeable based on what the owners-landlords knew or should have known about drug activity in the apartment building). Contrast *Flood* v. *Southland Corp.*, 416 Mass. 62, 72-73 (1993) (where store employee knew that teenagers gathered outside the store were under the influence of narcotics and one of them had a knife, but no particular security precautions were taken, the store was potentially liable in negligence for injuries inflicted upon one of the teenagers when stabbed by the teenager with the knife); *Fund* v. *Hotel Lenox of Boston, Inc.*, 418 Mass. at 193-195 (where hotel was in a high crime area and management was aware of numerous crimes within the hotel and nearby hotels but failed to take certain security measures to protect its guests from criminal acts of third persons, the risk of a violent attack upon one of its guests was within the foreseeable risk of harm resulting from the failure).

We comment further on the necessity for a voir dire about jurors' attitudes toward homosexuals when one of the parties in a civil case is a homosexual. On the criminal side of the court, appellate decisions have consistently encouraged trial judges to respond generously to motions that they question jurors individually about possible prejudice. See *Commonwealth* v. *De La Cruz*, 405 Mass. 269, 274 (1989); *Commonwealth* v. *Proulx*, 34 Mass. App. Ct. 494, 497 (1993). We think that the same practice should prevail on the civil side of the court.

Both by statute and by court rule, a judge is charged with determining whether any juror in a case is aware of any bias or prejudice that the juror may have. There is no question that some people do harbor prejudice against homosexuals. See *Commonwealth* v. *Plunkett*, 422 Mass. at 641 & n.4. When faced with a question designed to detect such bias, a judge

should make a brief examination of the facts of the case to determine if the question is relevant and important and whether sufficient prejudice is manifested to warrant such an inquiry. A judge may also assume that the party who desires the inquiry has evaluated the risk that the inquiry may activate latent bias in some jurors and insult others without uncovering bias in those jurors who refuse to acknowledge their bias. The ultimate decision as to whether the question should be asked lies within the judge's sound discretion, but the judge must be assisted in this decision by the party seeking the inquiry. That party bears the burden of demonstrating the importance and relevance of the question and the risk of prejudice inuring from its omission by furnishing the judge with a brief summary of the evidence to be presented, and an affidavit or other means indicating the manner and means by which the subject will be introduced or play a role in the case. If the judge determines that the question should be asked, the judge may then inquire of the jury collectively, individually,[6] or may simply cover the matter by incorporating the subject into his or her preliminary statement about the case before asking prospective jurors the mandated question about bias or prejudice under G. L. c. 234, § 28, and rule 47.

2. *Police reports.* The plaintiffs argue that the judge erred in refusing to allow the plaintiffs to introduce sixteen police reports relating to incidents at the Ding Ho covering the period from November, 1980, through August, 1986, to impeach Ng's testimony that no customer of the Ding Ho had been injured since 1965 and to demonstrate that an attack on the plaintiffs was within the foreseeable risk of harm created by the Ding Ho's failure to provide adequate security for its patrons.

Of the sixteen reports, thirteen involved incidents in which the police were called because customers of the Ding Ho attempted to leave the restaurant without paying their bill. Of these thirteen reports, one referred to customers being bumped by another customer attempting to flee without paying the bill; another referred to a customer who was charged with being a disorderly person after attempting to flee without paying the bill

---

[6]The judge, however, should be ever mindful of the requirements of G. L. c. 234, § 28, second par., which may necessitate an individual voir dire.

and was treated for a cut over the eye (there was no reference in the report to how and when the cut was inflicted); and a third referred to an incident in which Ng was injured by a customer who attempted to flee without paying the bill. The three reports not involving customers attempting to flee without paying the bill described an attempted armed robbery and two larcenies at the Ding Ho in which no injuries were inflicted on a customer.

Because those reports did not contradict Ng's testimony that no customer had previously been injured at the Ding Ho, see *Commonwealth* v. *Basch,* 386 Mass. 620, 623 (1982), and were either too remote in time or bore little resemblance to the criminal activity in this case, see *McLaughlin* v. *Vinios,* 39 Mass. App. Ct. 5, 8-9 (1995), the judge did not err in refusing to admit this evidence. In any event, even if we were to assume that the judge erred in excluding one or more of those police reports, the error would have been harmless because of the admission into evidence of numerous police reports of criminal activity at the Ding Ho or within 1,000 feet of the Ding Ho, from September, 1986, to the date of the shooting, including two reports where Ng or one of his employees fought with patrons who attempted to leave without paying their bills and a report where the Ding Ho's bartender was stabbed when he ordered seven youths to leave the restaurant's entrance.

3. *Newspaper articles.* The plaintiffs argue that three newspaper articles from the Worcester Telegram and Gazette should have been admitted as evidence because they were relevant on the issue whether the defendants knew or should have known of criminal activity at or within the neighborhood of the Ding Ho. See *Coyne* v. *Taber Partners I,* 53 F.3d 454, 461 & n.6 (1st Cir. 1995) (newspaper articles regarding a strike by taxi drivers and labor unrest were admissible when offered for the purpose of showing that a hotel knew or should have known of the possibility of violence and should have taken precautions to protect guests transported to the hotel from the airport). One of the articles described an incident in which the Ding Ho's bartender was stabbed by a teen outside the Ding Ho; another involved a robbery at the Ding Ho in which the robber fired his gun after leaving the Ding Ho; and the third involved a kidnaping which occurred more than 1,000 feet from the Ding Ho.

There is no question that the kidnaping incident, which occurred more than 1,000 feet from the restaurant and was not connected in any way with the defendants' premises, was not relevant, and was properly excluded. The other two articles were excluded by the judge because Ng had not read them. Those articles should not have been excluded on this basis because they were relevant on the issue of notice to the defendants of the possibility of violence to patrons or lawful occupants of their premises and the foreseeability of the risk of injury. However, the error was harmless because other newspaper articles on the stabbing and robbery had been admitted into evidence, as well as police reports and witness testimony about those incidents. *Foreign Car Center, Inc.* v. *Salem Suede, Inc.*, 40 Mass. App. Ct. 15, 17-18 (1996).

4. *Jury instructions.* The plaintiffs claim that the judge committed reversible error in failing to instruct the jury on the duty owed to off-duty police officers[7]; on the rescue doctrine[8]; and on the duty to give a warning adequate to enable visitors to avoid harm, or otherwise protect against it.[9] As provided by Mass.R. Civ.P. 51(b), 365 Mass. 816 (1974), "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds

---

[7]The requested instruction reads as follows: "The fact that Albert Monroe Toney, III[,] was an off-duty police officer does not lessen the defendants' duty of care with regard to protecting him or other patrons against reasonably foreseeable risks. The defendants owed the same duty to Albert Monroe Toney[,] III[,] as they owed to any other patron."

[8]The requested instruction reads as follows: "Negligence which creates peril invites rescue and, should the rescuer be hurt in the process, the tortfeasor will be held liable not only to the primary victim, but to the rescuer as well. *Barnes* v. *Geiger*, 15 Mass. App. Ct. [365, 369] (1983)."

[9]The requested instruction reads as follows: " 'A [landowner] who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons . . . , and by the failure of the [landowner] to exercise reasonable care to:

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.' Restatement (Second) of Torts [§] 344 [1965]."

of his objection." At the conclusion of the judge's charge, the plaintiffs renewed their request that the judge give their instruction on the duty owed to an off-duty police officer. The judge had declined to give this request at the charge conference and again declined to give it following the charge of the jury, stating that it was confusing and misleading. On both occasions, the plaintiffs did not object to the denial of this request. Similarly, when the judge after the charge declined to instruct the jury on the rescue doctrine or on the duty of a restaurant owner to warn visitors of dangers, the plaintiffs failed to lodge objections. Accordingly, we are of the opinion that the plaintiffs have failed to properly preserve their claims for appellate review.[10] We again remind litigants of the necessity of compliance with the requirements of rule 51(b).

We comment further on the plaintiffs' request for instruction on the rescue doctrine. The judge declined to give the instruction because it was inapplicable. As noted, the rescue doctrine has been characterized as follows: "negligence which creates peril invites rescue and, should the rescuer be hurt in the process, the tortfeasor will be held liable not only to the primary victim, but to the rescuer as well." *Barnes* v. *Geiger*, 15 Mass. App. Ct. 365, 369 (1983). *Hopkins* v. *Medeiros*, 48 Mass. App. Ct. 600, 603 (2000). As requested, it would ordinarily contemplate three entities: a tortfeasor, victim, and rescuer. Here the requested instruction was inapplicable because the alleged tortfeasor and victim, Ng (who was the proprietor of Ding Ho), were one and the same, and the injury which befell Toney

---

[10]Even if we were to assume that the plaintiffs had properly preserved their claims that the judge erred in failing to give the requested instruction on the duty of care owed Toney and in failing to give a supplemental instruction on the duty of a restaurant owner to warn of dangers of which visitors were not aware, we would consider those claims waived by the failure of the plaintiffs to provide us with proper appellate argument. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). The plaintiffs' argument relating to the duty of care owed Toney as an off-duty police officer consists solely of a factual description of the claim and a conclusory statement of error without legal citations. The plaintiffs' claim relating to the duty to warn consists of a one-sentence argument and a conclusion of error without legal citations. This is not acceptable appellate argument. *Gaffney* v. *Contributory Retirement Appeal Bd.*, 423 Mass. 1, 6 n.4 (1996). *Larson* v. *Larson*, 30 Mass. App. Ct. 418, 428 (1991). *Lyman* v. *Commissioner of Correction*, 46 Mass. App. Ct. 202, 208 (1999).

did not occur during the rescue. *Barnes* v. *Geiger*, 15 Mass. App. Ct. at 371. *Hopkins* v. *Medeiros*, 48 Mass. App. Ct. at 604. In any event, even if we were to assume an instruction on the rescue doctrine should have been given, its omission was harmless because the jury were properly instructed on the duty of care owed by the defendant Ding Ho.[11]

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*

---

[11]Ding Ho's request for costs of the appeal is denied.