Lauriat, Peter M., J.
The plaintiffs, Kevin R. Doyle (“Doyle”), administrator of the Estate of James H. Cassidy (“Cassidy”), and Susan Healey (“Healey”) (collectively “the plaintiffs”) filed a six-count complaint against the defendants, James L. Gould and Stephen Abrams, Trustees of the New City Trust (“New City Trust”), Gould & Company, and Northeastern University (“Northeastern”) (collectively “the defendants”). On March 1, 2006, the counts against New City Trust and Gould & Company were dismissed by stipulation.
The remaining counts are against Northeastern for wrongful death/negligence (Count III) and loss of consortium (Count VI). Northeastern has now moved for summary judgment as to both counts. For the following reasons, Northeastern’s motion for summary judgment is allowed.
FACTUAL BACKGROUND
The summary judgment record contains the following undisputed facts.
The New City Trust owned a thirty-two-unit apartment building located at 204 Hemenway Street, Boston, Massachusetts (“the Apartment Building”). The Apartment Building was managed by Gould & Company. Northeastern leased eight units from the New Cily Trust, including Apartment #1.[1] The written lease between Northeastern and the New City Trust for Apartment #1 ran from September 1, 2001 until August 31, 2002. After the lease’s expiration, Northeastern continued to pay rent.[2] The lease included the following two relevant clauses:
5. Care of Premises: The Lessee shall not paint, decorate or otherwise embellish and/or change and shall not make nor suffer any additions or alterations to be made in or to the leased premises without the prior written consent of the Lessor, nor make nor suffer any strip or waste, nor suffer the heat or water to be wasted, and at the termination of this lease shall deliver up the leased premises and all property belonging to the Lessor in good, clean and tenantable order and condition, reasonable wear and tear excepted. No washing machine, air-conditioning unit, space heater, clothes dryer, television or other serials, or other like equipment shall be installed without the prior written consent of the Lessor. No waterbeds shall be permitted in the leased premises.
18. Other Regulations: The Lessee agrees to conform to such lawful rules and regulations which are reasonably related to the purpose and provisions of this lease, or shall from time to time be established by the Lessor in the future for the safety, care, cleanliness, or orderly conduct of the leased premises and the building of which they are a part, and for the benefit, safety, comfort and convenience of all the occupants of said building.
Beginning in September of 2002, Cassidy, a student at Northeastern, lived in Apartment #1 with three other individuals. The License Agreement between Northeastern and Cassidy stated that “Northeastern University’s Residential Life system includes any living accommodations owned or leased by the school which provide quarterly housing to eligible students.” Further, the License Agreement included provisions that allowed Northeastern the right to inspect student residences[3] and to impose disciplinary actions. As of May 2003, Nathan MacKinnon (“MacKinnon”), Phillip Klingmann (“Klingmann”), Auden Kachler (“Kachler”), and Cassidy all lived together in Apartment #1.
The Apartment Building had two doors that led to the street. The first door (“Door #1”), which did not lock, led to an entryway where individuals could use a buzzer type system to announce their arrival to the tenants. The second door (“Door #2”) was locked. At times, however, this door was propped open. The door to Apartment #1, where Cassidy resided, was also equipped with a lock.[4] Cassidy’s bedroom, which was actually a walk-in closet, had a lock on its door. Cassidy kept a safe in his room.
On May 12, 2003, a tenant of the Apartment Building[5] allowed three black males to enter the building through Door #2. After one of Cassidy’s roommates let the three men into Apartment # 1, the men restrained the roommates and their guests. Eventually, one of the roommates led the three men to Cassidy’s room. Soon *374 thereafter, a struggle ensued and Cassidy was shot. Later that evening, Cassidy died from his gunshot wounds.
In the six months preceding Cassidy’s murder, there were four reported burglaries at the Apartment Building. It appears that Northeastern was aware of these burglaries. There is no evidence however, of any violent crimes taking place at the Apartment Building in the preceding six months. The plaintiffs and Northeastern appear to differ on the role of the Northeastern Police Department in maintaining security at the Apartment Building. In response to interrogatories propounded by the plaintiffs on Gould & Company, James Gould stated that “Northeastern University had regular security patrols in the area of 204 Hemenway Street, Boston Massachusetts. In addition, since approximately 1998 or 1999 Northeastern University regularly patrolled the Building located at 204 Hemenway Street, Boston, MA., on Thursday, Friday and Saturday nights.”
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Comm'r, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles it to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
I. Wrongful Death/Negligence [Count III]
Under Massachusetts law, “[a] person who (1) by his negligence causes the death of a person .... shall be liable in damages . . .” G.L.c. 229, §2 (“wrongful death statute”). Consequently, a determination that one was negligent is a prerequisite to finding liability under the wrongful death statute. In order to prove a negligence claim, “a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relationship between the breach of the duty and the damage.” Jupin v. Kask, 447 Mass. 141, 146 (2006) (citations omitted). An individual can be liable for negligence only where there is a duty of care. See Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624, 629 (1989). The issue of whether there was a duty of care is a question of law and is an appropriate subject for summary judgment. See Jupin, 447 Mass. at 146; see also Schofield, v. Merrill 386 Mass. 244, 248-49 (1982).
In terms of defining a duty, “(n]o better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.” Luoni v. Berube, 431 Mass. 729, 735 (2000) (citations omitted). These community customs and norms involve, to some extent, the foreseeability of the harm and a defendant’s ability to prevent it. Husband v. Dubose, 26 Mass.App.Ct. 667, 669 (1988). Further, “[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other’s person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other’s reliance upon the undertaking.” Mullins v. Pine Manor College 389 Mass. 47, 53 (1983), quoting Restatement (Second) of Torts §323.
Generally speaking, there is a common-law duty of reasonable care that the occupier of land owes to all lawful visitors. Mounsey v. Ellard, 363 Mass. 693, 707 (1973) (eliminating distinction between licensees and invitees). An individual owes no duty, however, when a risk is not one that could be reasonably foreseen by that individual. Husband, 26 Mass.App.Ct. at 669. “All the circumstances are examined in defining the scope of duty of care based on reasonable foreseeability of harm.” Whittaker v. Saraceno, 418 Mass. 196, 199 (1994).
In Massachusetts, “(l)andlords may be liable for ignoring criminal activities that occur on premises and were known or should have been known to them.” Griffiths v. Campbell, 425 Mass. 31, 34 (1997). However, “(s)ociety should not place the burden of all harm caused by random violent criminal conduct on the owner of the property where the harmful act occurred, without proof that the landowner knew or had reason to know of a threat. . .” Whittaker, 418 Mass. at 200. The Supreme Judicial Court has considered the circumstances where a landowner may be held liable for third-party criminal acts that occur on the landowner’s property. See e.g., Whittaker, 418 Mass. at 200 (landlord owed no duty to the plaintiff because plaintiffs injuries were not reasonably foreseeable); Flood v. Southland Corp., 416 Mass. 62, 72-73 (1993) (store owner’s argument that it owed no duty to plaintiff failed where evidence showed that criminal act came within reasonably foreseeable risk of harm); Foley v. Boston Hous. Auth., 407 Mass. 640, 644-45 (1990) (lack of foreseeability of attack established lack of duty). “The previous occurrence of similar criminal acts on or near a defendant’s premises is a circumstance to consider, but the foreseeability question is not conclusively answered in favor of a defendant landlord if there has been no prior similar criminal act.” Whittaker, 418 Mass. at 199.
*375 Overall, “the cases in which [the Supreme Judicial Court has] imposed liability [on landowners] are those in which a person legally on the premises is attacked, and the owner or landlord knew or should have known of both the previous attacks and the potential for a recurrence based on a failure to take measures to make the premises safer.” Griffiths, 425 Mass. at 35. Massachusetts courts have also considered the circumstances where a college or university owes a duty of care to its resident students. See Mullins, 389 Mass. at 50-51 (outlining duty of care owed by college to its resident students in preventing criminal acts of third parties); see also Bash v. Clark University, 22 Mass. L. Rptr. 84 (Worcester Super. Ct. November 20, 2006) (Agnes, J.) (dismissing complaint against University because student’s death from heroin overdose was not foreseeable).
In Mullins, the plaintiff was a student who was raped in an on-campus dormitory by an unidentified assailant. The Supreme Judicial Court noted that the college community itself recognized a college’s obligation to protect its resident students from the criminal acts of third parties. Mullins, 389 Mass. at 50. Further, the Court noted that the college voluntarily rendered security around the campus and dormitories and that the students and parents likely relied on this undertaking. Id. at 53-54. The court concluded that “(t]hese two principles of law provide a sufficient basis for the imposition of a duty on colleges to protect their resident students against the criminal acts of third parties.” Id. at 54.
Northeastern contends that it had no duty to provide security at the Apartment Building, that it did not breach any alleged duty to Cassidy, and that any alleged breach did not cause Cassidy’s death. The plaintiffs respond that Northeastern did owe Cassidy a duty to provide adequate security at the Apartment Building and that this duty was breached and caused his death.
A. Duty of Care
Northeastern’s argument that it did not owe Cas-sidy a duty of care can be summarized as follows: (1) Northeastern did not own or control the Apartment Building where Cassidy was murdered; (2) Cassidy’s harm was not reasonably foreseeable; and (3) Cassidy’s status as a Northeastern student did not create a duty of care.
Northeastern first argues that it did not own or control the Apartment Building. Instead, it was a tenant who was subject to the control of the New City Trust and/or Gould & Company. It appears undisputed that certain clauses contained in the lease between Northeastern and the New City Trust limited Northeastern’s ability to make additions or alterations. These clauses tend to suggest that Northeastern was not in control of Apartment #1 at the time Cassidy was murdered. It is also undisputed, however, that Northeastern published several documents, including the License Agreement that governed the conduct of Northeastern students. Further, the License Agreement specifically stated that leased properties were part of the “residential life system.” There is also some evidence that Northeastern patrolled the Apartment Building on Thursdays, Fridays and Saturdays.[6]
For purposes of summary judgment, the issue of whether Northeastern exercised control over the Apartment Building is irrelevant. Assuming arguendo, that Northeastern did control the Apartment Building, it would owe a common-law duly of care to Cassidy. Northeastern would not, however, be a guarantor of the safety for all persons lawfully at the Apartment Building. See Luisi v. Foodmaster Supermarkets, Inc., 50 Mass.App.Ct. 575, 577 (2000). Northeastern would only owe a duty to protect persons lawfully on the premises from reasonably foreseeable risks. Id. Thus, the issue is whether the risk of injuiy to Cassidy was foreseeable. The court must also consider whether the norms and customs of the community imposed a duty on Northeastern to protect Cassidy from harm. See Mullins, 389 Mass. at 47.
There is always a possibility that criminal conduct will occur. Whittaker, 418 Mass. at 200. “However, society should not place the burden of all harm caused by random violent criminal conduct on the owner of the property where the harmful conduct occurred, without proof that the landowner knew or had reason to know of a threat to the safety of persons lawfully on the premises against which the landowner could have taken reasonable preventive steps.” Id. Thus, “there is no duty owed when the risk which results in the plaintiffs injuiy is not one which could be reasonably anticipated by the defendant.” Foley, 407 Mass. at 646 (citations omitted).
In determining foreseeability, the focus is often on the previous occurrence of similar criminal acts on or near the premises. See Whittaker, 418 Mass. at 199. In the present case, there is no evidence of previous violent acts occurring at the Apartment Building. Although four burglaries were reported at the Apartment Building within the six months preceding Cassidy’s murder, there is no evidence that these burglaries involved any violence. In addition, Northeastern did not know, or have reason to know, that Cassidy would be targeted. See Griffiths, 425 Mass. at 35. The mere fact that Northeastern knew of some prior criminal activity does not render all future conduct foreseeable. Id.
Alternatively, in order for the plaintiffs to establish that Northeastern owed them a duty of care at the time of the murder, they could establish that such a duty has as a source existing community customs and norms, or that Northeastern voluntarily, or for consideration, assumed a duty of care to the plaintiffs. Mullins, 389 Mass. at 50. The Supreme Judicial Court has established a college’s obligation to protect its resident students from the criminal acts of third par *376 ties. Id. Unlike the student in Mullins, however, Cas-sidy did not live in an on-campus dormitory. Instead, Cassidy lived in a privately owned apartment building. As yet, no Massachusetts court has imposed a duty upon a college or university to protect a student from harm while that student lives in privately owned and managed housing rented by the institution. In holding that the college owed a duty, the Court in Mullins reasoned that “[t]he threat of criminal acts of third parties to resident students is self-evident, and the college is the party which is in the position to take those steps which are necessary to ensure the safety of its students.” Id. at 51. Here, Northeastern was not in the best position to take steps necessary to ensure Cassidy’s safety.
There is no suggestion in the record that Cassidy’s murder was foreseeable. Additionally, the norms and customs of the community did not impose a duty on Northeastern to protect Cassidy from harm. Consequently, there is no genuine issue of material fact as to duty, and plaintiffs will not be able to prove an essential element of their negligence case. Consequently, Northeastern is entitled to summary judgment in its favor on the plaintiffs’ wrongful death/negligence claim.
B. Breach of Duty
Even assuming, arguendo, that Northeastern owed a duty to Cassidy to provide security, it is clear from the record that it did not breach this duty. It is undisputed that Northeastern leased Apartment #1 from the New City Trust. It is also undisputed that the door to Apartment #1 was equipped with a lock, and that at least one of the doors leading to the street had a lock. Thus, even if Northeastern had a duty to provide for the Cassidy’s security, the plaintiffs cannot prove a breach of this duty. Therefore, Northeastern’s Motion for Summary Judgment as to Count III is allowed.
II. Loss of Consortium [Count VI]
The plaintiffs have also brought a claim for loss of consortium against Northeastern. This claim must fail because its foundation — that Northeastern’s negligence caused Cassidy’s death — does not survive summary judgment. See Mouradian v. General Elec. Co., 23 Mass.App.Ct. 538, 544 (1987), rev. denied, 399 Mass. 1105 (1987). Although Healey’s right to recover for loss of consortium is independent from the remedy available to the Estate of James Cassidy, any recovery for loss of consortium against Northeastern must be based on a claim that its negligence caused injury to her son. Id. Since the plaintiffs have failed to demonstrate a reasonable expectation of proving at trial that Northeastern’s negligence caused Cassidy’s death, Northeastern’s Motion for Summary Judgment as to Count VI is allowed.
ORDER
For the foregoing reasons, Northeastern’s Motion for Summary Judgment is ALLOWED.

In addition to Northeastern students, the Apartment Building housed students from other institutions and individuals who were not students.

While it is unclear from the record how long Northeastern and the New City Trust continued to operate without a lease, it is undisputed that this arrangement continued through May 12, 2003. Northeastern held the premises as a tenant-at-will according to the terms of the written lease. See O’Brien v. Hurley, 331 Mass. 172, 175 (1954).

Healey, Cassidy’s mother, testified at her deposition that N ortheastem conducted routine inspections of Apartment # 1. During one such inspection, Northeastern confiscated rats, which were kept by Cassidy in an aquarium tank, because no pets were allowed.

During oral argument, the parties agreed that the door to Apartment #1 did not have a “peep hole.” The court notes that, pursuant to 521 C.M.R. 9.5.2, Apartment #1 should have had a “peep hole” installed, but it appears from the lease between Northeastern and the New City Trust that the New City Trust was responsible for complying with 521 C.M.R. 9.5.2.

It appears that this tenant was not a Northeastern student.

Even if this disputed fact were tme, Cassidy’s murder occurred on a Monday evening.